FILED
COURT OF APPEALS
DIVISION II

2014 FEB -4  AM 9: 17

STATE OF WASHINGTON

BY_____
          DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| ALEX VON KLEIST, | No. 43138-6-II |
| Respondent, | (Consolidated with Nos. 43718-0-II, 43885-2-II, 43318-4-II, 43335-4-II, and 43425-3-II) |
| v. | |
| PAUL J. LUKSHA, a Canadian citizen, and GREGORY COCHRANE, a Canadian citizen, | UNPUBLISHED OPINION |
| Appellants, | |
| GRAOCH 161-1 GP, INC., a Washington corporation, and GRAOCH 161 GP, L. P., a Washington limited partnership, GRAOCH 160-1 GP, INC., a Washington corporation, and GRAOCH 160 CP, L. P., a Washington limited partnership, THE JACKALOPE FUND LIMITED PARTNERSHIP, a British Columbian limited partnership, GARY GRAY and JANE DOE GRAY, and the marital community thereof, LES PIOCH, a Canadian citizen, | |
| Defendants. | |

HUNT, J. — Gregory Cochrane and Paul J. Luksha appeal the superior court's denial of their motions to vacate two default judgments against them[1] in Alex Von Kleist's action for

---

[1] The second default judgment did not list Luksha as a judgment debtor; but his name appears on the third page of the judgment summary along with the other Defendants' names. We treat this as a scrivener's error because Von Kleist's second motion for default judgment named other Defendants, including Cochrane, but it did not name Luksha.

Consolidated Nos. 43138-6-II (with 43718-0-II, 43885-2-II, 43318-4-II, 43335-4-II, 43425-3-II)

securities fraud,[2] intentional misrepresentation, negligent misrepresentation, accounting,[3] breach of contract, violation of Washington's Consumer Protection Act,[4] and appointment of a receiver[5] for their partnership. Cochrane and Luksha argue that the superior court lacked personal jurisdiction over them and that there were other irregularities in procuring the judgments. Holding that improper service initially prevented the superior court from having personal jurisdiction over Cochrane and Luksha, we reverse its denial of their motion to vacate the first default judgment and remand to strike that judgment. Holding that proper service later bestowed personal jurisdiction over Cochrane, we affirm the superior court's denial of his motion to vacate the second default judgment; but because Luksha was not similarly later served, we remand for the superior court to strike his name from the second default judgment summary.

## FACTS

Alex Von Kleist is a Canadian citizen who resides in British Columbia. Gregory Cochrane and Paul J. Luksha, also Canadian citizens, are general partners in Graoch Associates Limited Partnership (GALP), a Canadian limited partnership, which controls hundreds of corporate entities in Canada and the United States under GALP President Gary M. Gray's management.

---

[2] RCW 21.20.010.

[3] RCW 25.10.210.

[4] RCW 19.86.090; RCW 19.86.093.

[5] RCW 7.60.025.

2

## I. VON KLEIST'S INVESTMENT IN WASHINGTON LIMITED PARTNERSHIP

On the advice of GALP general partner Les Pioch, Von Kleist decided to invest $1,012,000 in a GALP-controlled Washington limited partnership, "GRAOCH ASSOCIATES Limited Partnership #161" (Graoch 161). Clerk's Papers (CP) at 1301. Pioch presented Von Kleist with various documents about Graoch 161 and explained to him that (1) Graoch 161 was a Washington "Loan and Funding vehicle" for "GRAOCH ASSOCIATES #160 LP"[6] (Graoch 160)[7]; (2) Von Kleist's investments would be returned and payable back to him no later than October 15, 2008; and (3) if Graoch 161 missed a repayment date, Von Kleist would be entitled to 18 percent compounded interest per annum until Graoch 161 repaid his (Von Kleist's) investment. Based on these representations, Von Kleist felt that his investment "would be secure." CP at 1301. On November 15, 2007, Von Kleist entered into a "Subscription Agreement" with Graoch 161 to invest in that limited partnership. CP at 1302.

### A. Subscription Agreement: Forum Selection and Consent to Service by Mail

This Agreement provided that (1) for $1,012,000, Von Kleist would acquire a limited partnership interest in Graoch 161; (2) Graoch 161 would make one or more loans of $6,784,000 to Graoch 160, due and payable no later than October 15, 2008 ("Loan Repayment Date"[8]); (3) within 30 days of the Loan Repayment Date, Von Kleist would receive a written option (a) to remain a limited partner of Graoch 161 for an additional 12 months or (b) to withdraw as a limited partner of Graoch 161 and to recover his total investments plus accrued distributions.

---

[6] CP at 1301.

[7] Graoch 160 was another GALP-controlled limited partnership in Washington.

[8] CP at 1302.

Section 16 of this Agreement contained provisions selecting Washington as a forum selection and allowing service by mail. Section 15 of this Agreement contained an assignment provision.

Section 16 of the Agreement, provided, in pertinent part,

> This Subscription Agreement and all rights hereunder shall be governed by, and interpreted in accordance with, the laws of the State of Washington. The undersigned hereby submits to the nonexclusive jurisdiction of the courts of the State of Washington and of the federal courts in the Western District of Washington with respect to any action or legal proceeding commenced by any person or entity relating to or arising out of this Subscription Agreement, the Partnership or the Partnership's business, and consents to the service of process in any such action or legal proceeding by means of registered or certified mail, return receipt requested, in care of the address set forth below on the signature page or such other address as the undersigned shall furnish in writing to the Partnership.

CP at 1320.

Von Kleist signed this Agreement as a "Subscriber"; he was the sole "undersigned" to which the Agreement referred. CP at 1321. Although there was a blank signature line for GALP President Gray, neither Gray nor anyone else signed the Agreement on behalf of the referenced "partnership"[9]; GALP general partner Pioch signed only as a "Witness." CP at 1321.

On December 12, however, a month after Von Kleist had signed the Agreement, GALP President Gray sent Von Kleist a "written acceptance"[10] acknowledging receipt of Von Kleist's bank wire transfer of $1,012,658.23 to Graoch 161 in satisfaction of the Agreement. Gray's letter also represented that Von Kleist's initial distribution check was enclosed and that the next check would be delivered in January.

---

[9] CP at 1322.

[10] Br. of Appellant at 28.

4

### B. Breach of Agreement

As the October 15, 2008 loan repayment date neared, Von Kleist had not received the promised written option to withdraw his partnership. He contacted Pioch about this "missing" option letter and explained that he wanted to withdraw as limited partner of Graoch 161 and to recover his investments and accrued distributions. Pioch repeatedly promised that Von Kleist would receive payment in March 2009, but Von Kleist never received it. On July 17, 2009, Von Kleist contacted GALP general partner Cochrane requesting corporate information about Graoch 161. Von Kleist sent a follow up email, to which Cochrane responded, promising to provide financial statements, which, again, Von Kleist never received.

On September 17, 2009 Von Kleist's attorney, Stephen Pidgeon, sent demand letters to Graoch 161's registered agent for service of process (Bruce P. Weiland), Gray, Pioch, Cochrane, and Luksha, demanding full and complete $1,248,845.53 payment to Von Kleist and complete financial statements for Graoch 161 and Graoch 160. Von Kleist received no response to these demand letters.

## II. PROCEDURE

### A. Superior Court Action

Von Kleist sued Graoch 160; Graoch 161; Graoch 161-1 GP, Inc.; Graoch 160-1 GP, Inc.; The Jackalope Fund Limited Partnership; Gary Gray and Jane Doe Gray; Pioch; Cochrane; and Luksha (collectively, "Defendants") for (1) accounting; (2) appointment of a receiver for Defendants under RCW 7.60.025; and (3) damages based on violations of chapter 21.20 RCW (securities fraud), intentional misrepresentation, negligent misrepresentation, breach of contract, and violation of chapter 19.86 RCW (Consumer Protection Act).

5

Von Kleist served Defendants with a summons and verified complaint; he served some of them personally and others by certified mail. On December 9, Von Kleist effected personal service on Bruce Weiland, attorney and registered agent for Graoch 161, Graoch 161-1 GP, Inc., Graoch 160, and Graoch 160 GP, Inc., with a summons and verified complaint. On December 11, Von Kleist served Pioch, The Jackalope Fund Limited Partnership ("The Jackalope Fund"), Cochrane, and Luksha by certified mail. On December 18, Von Kleist secured personal service on Gray with a summons and verified complaint.

### 1. First default judgment

On January 27, 2010, Von Kleist filed a motion for order of default against all Defendants for failure to appear or to indicate any intent to appear or to defend. That same day, the superior court entered an order of default against all Defendants, including Cochrane and Luksha, and a default judgment for $1,245,165.31, listing all Defendants as judgment debtors.

In March 2009, attorney David Spellman spoke with Pidgeon on behalf of the out-of-country Defendants to negotiate an order relieving them from the default judgment. The attorneys prepared a stipulation agreement and order vacating the superior court's default order and default judgment against international Defendants: The Jackalope Fund, Luksha, Pioch, and Cochrane; they also discussed the possibility of settlement. On April 22, Pidgeon sent Spellman an email about the settlement and inquired whether Spellman had an offer; but he never heard back from Spellman about the settlement. The attorneys never signed the stipulation or filed it with the court.

6

2. Second default judgment

Von Kleist then secured personal service on all international Defendants, except Luksha. On February 18, 2010, Von Kleist personally served the original summons and verified complaint on Cochrane and The Jackalope Fund. On March 1, 2010, Von Kleist secured personal service on Pioch. On May 10, Von Kleist filed affidavits of service as to Cochrane, The Jackalope Fund, and Pioch; he also filed a second motion for default judgment as to these defendants, but he did not include Luksha. That same day, the superior court entered a second default judgment as to international defendants Cochrane, Pioch and The Jackalope Fund. Von Kleist did not include Luksha's name in the second default judgment's list of debtors, which included Cochrane, Pioch and The Jackalope Fund. Nevertheless, the second default judgment mentioned Luksha on the third page of the default judgment, which appears to have been a scrivener's error.

3. Motion to vacate default judgments

Defendants did not directly appeal either default judgment. Instead, on January 11, 2011, they filed a motion to vacate both default judgments, arguing that (1) the default judgments were void under CR 60(b)(5) for lack of personal jurisdiction over them, and (2) there were procedural irregularities in the grant of default judgments entitling them to vacation under CR 60(b)(1).[11] On April 6, 2012, the superior court denied Defendants' CR 60 motion, ruling that there was no basis for vacating the default judgments because it had jurisdiction over the Defendants under the

---

[11] In their motion to vacate, Defendants also argued that (1) Von Kleist had misrepresented his personal service under CR 60(b)(4) on Gray and Weiland, and (2) procedural and jurisdictional problems warranted the vacation of the default judgment under CR 60(b)(11). They do not, however, pursue these two issues in this appeal.

7

Consolidated Nos. 43138-6-II (with 43718-0-II, 43885-2-II, 43318-4-II, 43335-4-II, 43425-3-II)

Agreement's "dispositive" "initial forum selection clause." Verbatim Report of Proceedings (VRP) (Apr. 6, 2012) at 7.

### B. Appeal from Denial of CR 60 Motion To Vacate Default Judgments

Defendants appealed. Cochrane and Luksha also filed a separate Notice of Appeal seeking review of the superior court's denial of their motion to vacate the default judgments entered against them. On November 20, 2012, a commissioner of our court dismissed the appeals of all Defendants except Cochrane and Luksha, who remain the only active appellants before us in this consolidated appeal.

### ANALYSIS

Cochrane and Luksha argue that the superior court erred in denying their motion to vacate the default judgments under CR 60(b)(5) and CR 60(b)(1) on two alternative grounds: (1) The default judgments were void under CR 60(b)(5) because the superior court lacked personal jurisdiction over them based on lack of proper personal service (required under Washington's long arm statute)[12]; and (2) in the alternative, the default judgments against Cochrane and Luksha suffered from serious irregularities that warrant vacation under CR 60(b)(1).

We agree with Cochrane and Luksha that the superior court lacked personal jurisdiction over them and, therefore, the first default judgment was void. As for the second default judgment, however, the record shows that Von Kleist complied with the long arm statute's service requirement when he personally served Cochrane with the summons and complaint on February 18; thus, the second default judgment is not void as to Cochrane. The record also

---

[12] RCW 4.28.185.

8

Consolidated Nos. 43138-6-II (with 43718-0-II, 43885-2-II, 43318-4-II, 43335-4-II, 43425-3-II)

shows that Von Kleist neither named nor attempted to serve Luksha with the second motion for default.

## I. PERSONAL JURISDICTION

Cochrane and Luksha first argue that both default judgments were void for lack of personal jurisdiction because (1) Von Kleist had not personally served them with his summons and complaint as required by Washington's long arm statute; and (2) thus, the superior court erred in denying their motion to vacate default judgments under CR 60(b)(5). Von Kleist counters that the Agreement's forum selection (Washington) clause rendered Washington's long arm statute inapplicable; and, therefore, service by mail under CR 4(i)(1)(D) established personal jurisdiction.[13]

We hold that because Cochrane and Luksha did not consent to service by mail, (1) Washington's long arm statute governed service of process over them, (2) Von Kleist did not properly serve them in person outside the state with his first motion for default so as to confer personal jurisdiction, and (3) the first default judgment was void for lack of personal jurisdiction. We further hold that the superior court similarly lacked jurisdiction to enter the second default judgment as to Luksha. Finally we hold that the superior court did not lack jurisdiction over Cochrane to enter the second default judgment; therefore, we disagree with his assertion that the second default judgment was void as to him.

---

[13] Von Kleist asserts that because CR 4(i)(1)(D) controls, instead of the long arm statute, no affidavit was necessary to show an attempt to serve Defendants in Washington. *See* RCW 4.28.185(4). *See also, contra,* RCW 4.28.185(2), which allows personal service outside the state on a defendant with minimum Washington contacts, and subsection (4), which requires the filing of an affidavit of such service stating that "service cannot be made within the state." RCW 4.28.185(4). *See also* RCW 4.28.180.

9

A. Standard of Review; Personal Jurisdiction over Nonresident Defendant

Generally, we review for abuse of discretion a superior court's ruling on a motion for relief from judgment under CR 60(b). *Showalter v. Wild Oats*, 124 Wn. App. 506, 510, 101 P.3d 867 (2004). A superior court abuses its discretion if it exercises discretion without tenable grounds or reasons. *State ex. rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

We review de novo, however, a trial court's denial of a motion to vacate a default judgment for lack of jurisdiction.[14] *Ralph's Concrete Plumbing, Inc., v. Concord Concrete Pumps, Inc.*, 154 Wn. App. 581, 585, 225 P.3d 1035 (2010). CR 60(b)(5) permits relief from a final judgment that is void. A default judgment entered against a person over whom the court has no personal jurisdiction is void, and a court has a nondiscretionary duty to vacate it. *Scott v. Goldman*, 82 Wn. App. 1, 6, 917 P.2d 131, *review denied*, 130 Wn.2d 1004 (1996); *In re Marriage of Markowski*, 50 Wn. App. 633, 635, 749 P.2d 754 (1988).

A superior court has personal jurisdiction over an out-of-state defendant if (1) the party asserting jurisdiction meets the requirements of Washington's long arm statute, or (2) there is written consent to personal jurisdiction. *Ralph's Concrete Plumbing*, 154 Wn. App. at 584-85 (Washington courts may assert personal jurisdiction over out-of-state defendant if long arm statute is satisfied); *Kysar v. Lambert*, 76 Wn. App. 470, 484, 887 P.2d 431, *review denied*, 126 Wn.2d 1019 (1995) (consent to personal jurisdiction by written agreement); *Voicelink Data*

---

[14] In *Morris v. Palouse River & Coulee City R.R.*, 149 Wn. App. 366, 370-71, 203 P.3d 1069, *review denied*, 166 Wn.2d 1033 (2009), Division Three analyzed whether the trial court erred in denying defendant's CR 60(b)(5) motion to vacate for lack of jurisdiction under abuse of discretion. The court in *Morris*, however, reviewed de novo the specific question of whether service of process complied with statutory requirements for jurisdiction. *Morris*, 149 Wn. App. at 371.

Consolidated Nos. 43138-6-II (with 43718-0-II, 43885-2-II, 43318-4-II, 43335-4-II, 43425-3-II)

*Servs., Inc. v. Datapulse, Inc.*, 86 Wn. App. 613, 620, 937 P.2d 1158 (1997). Washington's long arm statute, RCW 4.28.185, extends the jurisdiction of Washington courts to out-of-state defendants, so long as both the long arm statute's requirements and due process are satisfied. *In re Marriage of Yocum*, 73 Wn. App. 699, 702, 870 P.2d 1033 (1994). The party asserting jurisdiction under the long arm statute has the burden of establishing its requirements "by prima facie evidence." *Yocum*, 73 Wn. App. at 703. To establish jurisdiction over an out-of-state defendant under the long arm statute, a party must (1) show that the out-of-state defendant committed one of the acts listed in the statute[15], (2) personally serve the out-of-state defendant, and (3) file an affidavit of service that is "to the effect that service cannot be made within the state." RCW 4.28.185(1), (2), (4). As an alternative to the long arm statute, a second, independent basis for personal jurisdiction is proof of consent to personal jurisdiction. *Kysar*, 76 Wn. App. at 487. A valid forum selection clause in a "'freely negotiated'" agreement is proof of consent to jurisdiction. *Kysar*, 76 Wn. App. at 484 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n.14, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985)).

B. Cochrane and Luksha Did Not Consent to Service by Mail

Section 16 of the Subscription Agreement, into which Von Kleist and the Defendants entered, contained the following provision for forum selection, consent to personal jurisdiction, and consent to service by mail:

> This Subscription Agreement and all rights hereunder shall be governed by, and interpreted in accordance with, the laws of the State of Washington. The undersigned hereby submits to the nonexclusive jurisdiction of the courts of the State of Washington and of the federal courts in the Western District of

---

[15] The long arm statute lists the acts that permit personal service outside Washington State for purposes of establishing personal jurisdiction in our courts. *See* RCW 4.28.185(1)-(6).

11

> Washington with respect to any action or legal proceeding commenced by any person or entity relating to or arising out of this Subscription Agreement, the Partnership or the Partnership's business, and consents to the service of process in any such action or legal proceeding by means of registered or certified mail, return receipt requested, in care of the address set forth below on the signature page or such other address as the undersigned shall furnish in writing to the Partnership.

CP at 1320. The plain language of this provision, however, bound only Von Kleist to personal jurisdiction in Washington and service by mail.[16]

Cochrane and Luksha, both GALP partners, contend they did not consent to personal jurisdiction in Washington or to service by mail because the Agreement's forum selection/service by mail provision did not bind the Graoch 161 partnership and, therefore, could not bind them as partners. They argue that this provision was not binding on them because (1) the Agreement was a mere "offer"[17] from Von Kleist to invest in Graoch 161; (2) the parties intended that the Agreement would bind only Von Kleist, the sole "undersigned"[18] to the Agreement; (3) neither they nor any other Graoch 161 agent signed the Agreement; and (4) Graoch 161 did not assume the obligations stated in the Agreement, such as the forum selection and service by mail provision.[19] We agree.

---

[16] We disagree with the superior court's ruling that Section 16 of the Agreement governed all parties' selection of Washington as a forum and constituted all Defendants' consent to Washington court jurisdiction, including service by mail.

[17] Br. of Appellant at 28.

[18] Br. of Appellant at 29.

[19] Von Kleist counters that because Cochrane and Luksha were partners of various Graoch entities, including Graoch 161 and GALP, (1) they were bound by the actions of GALP's other partners, including Graoch 161's acceptance of the Agreement; and (2) because all Defendants were third-party beneficiaries of the Agreement that Von Kleist entered into with Graoch 161, the Agreement should be binding on them.

12

A valid contract requires mutual assent, generally in the form of an offer and an acceptance. *Yakima County (W. Valley) Fire Prot. Dist. No. 12 v. City of Yakima*, 122 Wn.2d 371, 388-89, 858 P.2d 245 (1993). In interpreting contracts, Washington courts follow the "objective manifestation test" for contract formation. *Wilson Court Ltd. P'ship v. Tony Maroni's, Inc.*, 134 Wn.2d 692, 699, 952 P.2d 590 (1998). A court determines the parties' intent by focusing on their objective manifestations as expressed in the agreement. *McGuire v. Bates*, 169 Wn.2d 185, 189, 234 P.3d 205 (2010). A court will not read into a contract that is otherwise clear and unambiguous. *Mayer v. Pierce County Med. Bureau, Inc.*, 80 Wn. App. 416, 420, 909 P.2d 1323 (1995).

The plain language of Section 16 of the Agreement expresses no intent to bind Graoch 161 (and its partners) to service by mail. Rather, under this provision, only "the undersigned" (Von Kleist) must accept service by mail:

> The *undersigned* hereby submits to the nonexclusive jurisdiction of the courts of the State of Washington and of the federal courts in the Western District of Washington with respect to any action or legal proceeding commenced by any person or entity relating to or arising out of this Subscription Agreement, the Partnership or the Partnership's business, and consents to the service of process in any such action or legal proceeding by means of registered or certified mail, return receipt requested, in care of the address set forth below on the signature page or such other address as the *undersigned* shall furnish in writing to the Partnership.

CP at 1320 (emphasis added). This reference to the "undersigned" unambiguously refers to Von Kleist, who signed as the sole subscriber and who was the only party who signed the Agreement in a binding contractual capacity.[20] The last clause of Section 16—"such other address as the

---

[20] Pioch, the only other person who signed the Agreement, signed only as a witness, not as a Graoch 161 agent in a contractual capacity.

13

*undersigned* shall furnish in writing to the *Partnership*"—further demonstrates the parties' intent that the service by mail provision was to bind only "the undersigned," namely Von Kleist, and not "the Partnership" (Graoch 161).[21] CP at 1320 (emphasis added).

Although the Agreement contained a blank signature line for Gray, neither Gray nor any Graoch 161 or GALP representative signed the Agreement. Again, Pioch signed, but only as a "[w]itness." CP at 1321. Accordingly, the service by mail provision did not bind either Cochrane or Luksha; instead, it bound only the "undersigned," namely Von Kleist, to the Agreement and its provisions.[22] Because the Agreement did not bind Luksha and Cochrane, they did not consent to service by mail and, therefore, Washington's long arm statute governs service of process here.[23]

### C. Service of Process under Washington's Long Arm Statute

Proper service of process is basic to personal jurisdiction. *Pascua v. Heil*, 126 Wn. App. 520, 526, 108 P.3d 1253 (2005). To subject defendants located outside our state to state court

---

[21] *See, e.g., Oltman v. Holland Am. Line USA, Inc.*, 163 Wn.2d 236, 250, 178 P.3d 981 (2008) (forum selection clause not binding on third party who did not agree to the contract containing the clause).

[22] Because we hold that the Agreement bound only Von Kleist, and not Graoch 161, we do not address whether the Agreement bound Cochrane and Luksha under partnership theory or third party beneficiary theory.

[23] Cochrane and Luksha concede that the GALP partnership "accepted" Von Kleist's Subscription Agreement when GALP President Gray acknowledged receipt of Von Kleist's $1,012,000. Br. of Appellants at 28. This acceptance of Von Kleist's offer to buy in as a Graoch 161 partner did not, however, constitute acceptance of the service by mail obligation under the Agreement, which, again, by its plain terms bound only the "undersigned," Von Kleist. CP at 1320.

jurisdiction, Washington's long arm statute, RCW 4.28.185, requires personal service on them.[24] Cochrane and Luksha are Canadian citizens residing in Canada; thus, our long arm statute required personal service to confer jurisdiction over them in Washington courts. RCW 4.28.185.

Cochrane and Luksha assert that Von Kleist failed to comply with Washington's long arm statute because (1) he served them by mail instead of serving them in person as the statute requires; and (2) he failed to file the statutorily required affidavits of service before the superior court granted both default judgments. Cochrane and Luksha are correct that before obtaining the first default judgment, Von Kleist did not personally serve them. Instead, Von Kleist served Cochrane and Luksha with his summons and complaint by certified mail.[25] When Cochrane and Luksha did not respond, the superior court granted Von Kleist's motion and entered the first default judgment against them on January 27, 2010. Because Von Kleist did not personally serve out-of-state defendants Cochrane and Luksha, as required by the long arm statute, (1) Von Kleist failed to satisfy the long arm statute service requirements; and (2) as a result, the superior court lacked personal jurisdiction over Cochrane and Luksha to enter the first default judgment against them.

---

[24] RCW 4.28.185(2) states:
> Service of process upon any person who is subject to the jurisdiction of the courts of this state, as provided in this section, may be made by personally serving the defendant outside this state, as provided in RCW 4.28.180, with the same force and effect as though personally served within this state.

[25] Von Kleist argues that (1) the long arm statute personal service requirement did not apply here because Cochrane and Luksha contractually consented to service by mail; and (2) therefore, CR 4(i)(1)(D)'s service by mail provision controlled instead. We disagree. Because we hold that the Agreement's forum selection and consent to service by mail provision did not bind the Cochrane and Luksha to accept service by mail, we do not further address this argument.

For purposes of the second default judgment, however, Von Kleist complied substantially with the long arm statute to confer personal jurisdiction over Cochrane in Washington courts. Cochrane and Luksha do not dispute that before the superior court entered the second default judgment, Von Kleist had personally served his summons and complaint on Cochrane. Instead, Cochrane and Luksha contend that the second default judgment was void for lack of personal jurisdiction over them because (1) Von Kleist failed to file a timely affidavit of inability to serve Cochrane in Washington, as required under RCW 4.28.185(4); and (2) Von Kleist did not personally serve Luksha.

We first dispose of Cochrane and Luksha's second point: Von Kleist did not name Luksha in his second motion for default judgment; nor did the second default judgment list Luksha as a debtor. Therefore, to the limited extent that the second default judgment arguably included Luksha, the superior court had no personal jurisdiction over him; and, other than ordering Luksha's name stricken from the judgment summary, we do not further address the second default judgment as to him.

We next address Cochrane and Luksha's first point—whether Von Kleist timely filed an affidavit of inability to serve Cochrane in Washington to satisfy the long arm statute's requirement. Personal service outside Washington state is valid under the long arm statute only when an affidavit is made and "filed to the effect that service cannot be made within the state" on

Consolidated Nos. 43138-6-II (with 43718-0-II, 43885-2-II, 43318-4-II, 43335-4-II, 43425-3-II)

the named defendant. RCW 4.28.185(4).[26] If a plaintiff has not complied with this affidavit requirement, then there is no personal jurisdiction over the named defendant and any judgment entered against that defendant is void. *Sharebuilder Sec. Corp. v. Hoang*, 137 Wn. App. 330, 335, 153 P.3d 222 (2007). The standard for meeting this RCW 4.28.185(4) affidavit requirement, however, is substantial and not strict compliance. *Barr v. Interbay Citizens Bank of Tampa, Fla.*, 96 Wn.2d 692, 696, 649 P.2d 827 (1982).

Here, as Cochrane and Luksha acknowledge, Von Kleist personally served Cochrane on February 18, 2010. Von Kleist's affidavit of service on Cochrane in Canada, and Pidgeon's later declaration in support of Von Kleist's motion for default judgment against international defendants, established that Cochrane is a Canadian citizen residing in Toronto, Ontario. Thus, Von Kleist's affidavit of service as to Cochrane substantially complied with the long arm statute's requirement that the affidavit of service include a statement "to the effect that service cannot be made within the state" of Washington. RCW 4.28.185(4).

Cochrane and Luksha incorrectly assert, however, that Von Kleist waited until January 5, 2011, to file his affidavit[27], which, therefore, was untimely because the statute required that it be

---

[26] It is caselaw, not the long arm statute, that mentions filing of such affidavit should occur "before" the court enters judgment. *Sharebuilder Sec. Corp. v. Hoang*, 137 Wn. App. 330, 334-35, 153 P.3d 222 (2007); *see also* RCW 4.28.185(4). But neither *Sharebuilder* nor any other case of which we are aware specifically addresses and holds that such affidavit is insufficient if filed on the same day as judgment is entered, as was the case here, regardless of whether it is filed immediately before or after the judgment.

[27] The January 5, 2011 affidavit, to which Cochrane and Luksha refer, is Pidgeon's affidavit about service on the out-of-state defendants, filed in response to defendants' motion to vacate under CR 60(b)(5). Pidgeon's affidavit includes the timely May 10, 2010 affidavit of service as to Cochrane.

17

Consolidated Nos. 43138-6-II (with 43718-0-II, 43885-2-II, 43318-4-II, 43335-4-II, 43425-3-II)

filed before the superior court entered default judgment on January 27, 2010, or May 10, 2010.[28]

On the contrary, the record shows that Von Kleist filed his affidavit of service on Cochrane on

May 10, 2010, the same day the superior court entered the second default judgment against

Cochrane. We hold that (1) this affidavit's filing substantially complied with the long arm

statute[29] to confer personal jurisdiction over Cochrane; (2) the superior court, therefore, had

personal jurisdiction over him; and (3) the second default judgment was not void as to Cochrane

for lack of jurisdiction.[30]

## II. CR 60(b)(1) Motion To Vacate

In the alternative, Cochrane and Luksha argue that even if the superior court had personal

jurisdiction over them, the superior court erred in denying their motion to vacate the default

judgments under CR 60(b)(1) because there were procedural irregularities in entering these

judgments. Having already held that the first default judgment was void as to both Cochrane and

Luksha and should have been vacated under CR 60(b)(5), we need not reach their argument

about irregularities in the first default judgment. Thus, we address only whether the superior

court erred in denying their CR 60(b)(1) motion to vacate the second default judgment, which

under our holding above, was potentially valid only as to Cochrane.

---

[28] Moreover, the cases Cochrane and Luksha cite are distinguishable and do not apply here. These cases involved filing affidavits months after the entry of the default judgment, which is not what happened here.

[29] RCW 4.28.185(4).

[30] As previously explained, however, the superior court did not have personal jurisdiction over Luksha and, thus, we remand to remove his name from the judgment summary in the second default judgment.

18

Cochrane and Luksha argue that the following "irregularities" occurred: (1) The superior court granted the second default judgment without previously amending or vacating the first default judgment; (2) the superior court granted the second default judgment without previously securing an entry of default against Luksha; and (3) Cochrane and Luksha had meritorious defenses to Von Kleist's claims. Br. of Appellants at 40. The exclusive procedure for attacking an allegedly defective judgment is by appeal from the judgment, not by appeal from denial of a CR 60(b) motion. *Bjurstrom v. Campbell*, 27 Wn. App. 449, 451, 618 P.2d 533 (1980). CR 60(b) is not a substitute for appeal. *Bjurstrom*, 27 Wn. App. at 451. An unappealed final judgment cannot be restored to an appellate track by means of moving to vacate and then appealing the denial of the motion. *State v. Gaut*, 111 Wn. App. 875, 881, 46 P.3d 832 (2002).

Because Cochrane and Luksha did not appeal the second default judgment,[31] the validity or irregularity of its entry is not before us here. Instead, we have before us their appeal of only the superior court's denial of their motion to vacate the second default judgment under CR 60(b)(1). In this more limited challenge, they fail.

### A. Standard of Review

On review of an order denying a CR 60(b) motion to vacate a judgment, only the propriety of the motion's denial, not the impropriety of the underlying judgment, is before us. *Gaut*, 111 Wn. App. at 881. We will not disturb a superior court's decision on a motion to vacate a default judgment unless the superior court has abused its discretion. *Morin v. Burris*,

---

[31] RAP 5.2(a) requires that notice of appeal be filed within 30 days of entry of the judgment in the superior court. Cochrane and Luksha did not file direct appeals from the superior court's January 2010 default judgment or its May 2010 default judgment. Instead, they waited until January 2011 and filed a CR 60(b) motion to vacate these default judgments.

160 Wn.2d 745, 753, 161 P.3d 956 (2007). A superior court abuses its discretion if it exercises discretion based on untenable grounds or reaches a decision based on untenable reasons. *Morin*, 160 Wn.2d at 753.

### B. No Abuse of Discretion

Cochrane and Luksha argue that the superior court abused its discretion in denying their motion to vacate the second default judgment in two respects: (1) it did not first vacate the prior default judgment, which failure constitutes an "irregularity" warranting grant of their CR 60(b)(1) motion to vacate the second default judgment; and (2) although the *White*[32] factors do not apply to a claim of irregularity, if these factors did apply here, Cochrane and Luksha had "meritorious defenses" to Von Kleist's claims, which support vacation of the default judgment as a matter of equity.[33] Br. of Appellants at 44. These arguments fail.

Irregularities under CR 60(b)(1) are those relating to failure to adhere to some prescribed rule or mode of proceeding. *In re Guardianship of Adamec*, 100 Wn.2d 166, 174, 667 P.2d 1085 (1983). Cochrane and Luksha fail to provide any authority to support their position that a superior court cannot issue a second default judgment without first vacating a previously

---

[32] *White v. Holm*, 73 Wn.2d 348, 352, 438 P.2d 581 (1968). Typically, we evaluate a motion to vacate under CR 60(b)(1) under the four *White* factors, which look to whether (1) there is substantial evidence to support a prima facie defense to the claims; (2) the moving party's failure to appear timely was occasioned by mistake, inadvertence, surprise, or excusable neglect; (3) the moving party acted with due diligence after notice of entry of default; and (4) no substantial hardship will result to the opposing party.

[33] Cochrane and Luksha also argue that the superior court did not first issue a valid order of default against Luksha before entering the second default judgment, which failure constituted an "irregularity" under CR 60(b)(1). Br. of Appellants at 43. Having already held that the second default judgment did not apply to Luksha, we do not address this argument.

entered default judgment[34]; nor are we independently aware of any such authority. Accordingly, Cochrane and Luksha fail to establish that the superior court's entry of the second default judgment was an irregularity warranting vacation under CR 60(b)(1).

Focusing primarily on alleged equities, Cochrane and Luksha next contend that their "meritorious defenses" to Von Kleist's claims met the requirements for setting aside a default judgment under the four-part *White* test.[35] Br. of Appellants at 44. Yet they correctly acknowledge that this *White* four-part test does not control a claim of irregularity.[36] We agree that Washington law is clear that vacating a default judgment for irregularity does not hinge on whether the defendant can show a meritorious defense. *See Kennewick Irrigation Dist. v. 51 Parcels of Real Property*, 70 Wn. App. 368, 371, 853 P.2d 488, *review denied*, 122 Wn.2d 1027 (1993) (*White* factors do not apply to alleged irregularity under CR 60(b)(1)). But we disagree that the *White* factors apply to Cochrane and Luksha's claim of irregularity. *See, e.g., Mosbrucker v. Greenfield Implement, Inc.*, 54 Wn. App. 647, 652, 774 P.2d 1267 (1989) (a claim of irregularity is not controlled by the test set out in *White*, which applies to cases involving excusable neglect or inadvertence). We hold that Cochrane and Luksha fail to establish that the superior court abused its discretion in denying their motion to vacate the second default judgment under CR 60(b)(1). Therefore, we affirm the superior court's denial of this motion; nevertheless, for reasons previously explained, we agree that Luksha should not have been included in this second default judgment and that his name should be stricken on remand. We

---

[34] The cases that Cochrane and Luksha cite do not support this proposition; rather, they address collateral issues.

[35] *See* n.34.

[36] *See, e.g.*, CR 60(b)(1).

Consolidated Nos. 43138-6-II (with 43718-0-II, 43885-2-II, 43318-4-II, 43335-4-II, 43425-3-II)

reverse the superior court's denial of Cochrane and Luksha's motion to vacate the first default judgment, entered January 27, 2010. We affirm the superior court's denial of their motion to vacate the second default judgment entered May 10, 2010, with the exception of remanding to strike Luksha's name from the third page of the second default judgment.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Hunt, J.

We concur:

Worswick, C.J.

Johanson, J.

22