[No. 31814-4-I.    Division One.    April 11, 1994.]

*In the Matter of the Marriage of* SHARON K. YOCUM, *Respondent, and* GILBERT L. YOCUM, *Appellant.*

*Craig Davis*, for appellant.

*Charles J. Tull* and *Langabeer, Tull & Cuillier, P.S.*, for respondent.

AGID, J. — Gilbert L. Yocum appeals a child support modification order and mandatory wage assignment. He

contends that Washington state courts lack personal jurisdiction over him because he has had no contacts with Washington sufficient to sustain jurisdiction under the long-arm statute and the due process clause of the Fourteenth Amendment.

On August 6, 1991, Sharon K. Yocum petitioned the court to modify a child support order entered by an Oklahoma court in 1980.[1] At that time, Ms. Yocum and the Yocums' two children had been living in Washington for 4 years, and Mr. Yocum was stationed in Texas with the United States Air Force. He moved to dismiss Ms. Yocum's petition for modification for lack of personal jurisdiction. The court commissioner ruled that Mr. Yocum was subject to the jurisdiction of Washington courts for purposes of hearing the Petitioner's request for a mandatory wage assignment. The trial court denied Mr. Yocum's subsequent motion to revise the commissioner's order.

Mr. Yocum again moved to dismiss the petition for modification on jurisdictional grounds, and the trial court again denied the motion, finding that the father was in arrears on his child support obligation.[2] In support of its determination that it had personal jurisdiction over Mr. Yocum to modify the Oklahoma support order, the trial court entered the following conclusions:

2.2 FAILURE TO PAY REQUIRED CHILD SUPPORT: The failure to pay the required child support was a tortious act committed against the parties residing in Washington State. *In re Miller*, 1976 86 Wn.2d 712[, 548 P.2d 542 (1976)].

2.3 PERSONAL JURISDICTION: Personal jurisdiction is secured by RCW 4.28. 185(1)(b). It is unreasonable to expect the mother to go to Texas to bring this action as she has never

---

[1]The Oklahoma order modified a child support order that was part of a Missouri divorce decree.

[2]The record indicates that the father's monthly support obligation for both children under the Oklahoma order is $400. Beginning June 1991, the father began reducing his monthly support payment by $200. At oral argument, Mr. Yocum's attorney informed the court that the military had reduced the support award because it erroneously believed that the Yocums' older child had turned 18. This error has been rectified, and Mr. Yocum is now paying both arrearages and current support.

lived there. The only reason the Respondent Father is there is because it is his military duty station.

2.4 JURISDICTION BY THE COURT: Neither Oklahoma nor Missouri are reasonable forums at this time.

2.5 APPEARANCES: The nature of this action is not such as to require the Respondent Father's personal appearance and this Court is the most convenient for all parties.

2.6 COURT'S FINDINGS: The court finds that the case of *Kulko v. Superior Court of California*, 1978, 436 U.S. 84[, 56 L. Ed. 2d 132, 98 S. Ct. 1690 (1978)] is consistant [*sic*] with *In Re Miller* (supra) and therefore it is this Court's Order that the Petitioner Mother may proceed with the modification of the Decree of Dissolution.

On October 28, 1992, the trial court ordered a modification of Mr. Yocum's child support obligation. This appeal followed.

Mr. Yocum contends that the trial court erred in asserting in personam jurisdiction over him because he resides in Texas, has never lived in Washington, and had no role in the mother's decision to move to Washington with their daughters. Therefore, he argues there are insufficient contacts with Washington to satisfy the requirements of either the long-arm statute, RCW 4.28.185, or the due process clause of the Fourteenth Amendment.

■ ■ When the underlying facts are undisputed, the court reviews the trial court's assertion of personal jurisdiction de novo. *Lewis v. Bours*, 119 Wn.2d 667, 669, 835 P.2d 221 (1992). A court's exercise of jurisdiction under the long-arm statute must satisfy both the provisions of RCW 4.28.185 and due process requirements. *Grange Ins. Ass'n v. State*, 110 Wn.2d 752, 756, 757 P.2d 933 (1988), *cert. denied*, 490 U.S. 1004 (1989); *accord Lewis*, 119 Wn.2d at 670. The trial court predicated its exercise of jurisdiction on RCW 4.28.185(1)(b), which reads:

Any person, whether or not a citizen or resident of this state, who in person or through an agent does any of the acts in this section enumerated, thereby submits said person, and, if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of said acts:

. . . .

(b) The commission of a tortious act within this state[.]

Except where limited by its terms, the long-arm statute is intended to operate to the full extent permitted by due process. *Werner v. Werner*, 84 Wn.2d 360, 364, 526 P.2d 370 (1974).

■ ■ In *Tyee Constr. Co. v. Dulien Steel Prods., Inc.*, 62 Wn.2d 106, 381 P.2d 245 (1963), the Supreme Court set out the due process requirements for the court's exercise of personal jurisdiction under the long-arm statute:

> (1) The nonresident defendant or foreign corporation must purposefully do some act or consummate some transaction in the forum state; (2) the cause of action must arise from, or be connected with, such act or transaction; and (3) the assumption of jurisdiction by the forum state must not offend traditional notions of fair play and substantial justice, consideration being given to the quality, nature, and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded the respective parties, and the basic equities of the situation.

(Footnotes omitted.) *Tyee*, 62 Wn.2d at 115-16. These requirements embody the "minimum contacts" test set forth in *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 90 L. Ed. 95, 66 S. Ct. 154, 161 A.L.R. 1057 (1945), which must be met in order to comport with the due process clause of the Fourteenth Amendment.

In order to establish that the court has jurisdiction under the long-arm statute, the plaintiff need only demonstrate by prima facie evidence that the defendant committed a tort in the forum state. Thus, the court treats the allegations in the complaint as established for purposes of determining jurisdiction. *Lewis*, 119 Wn.2d at 670.

The United States Supreme Court's decision in *Kulko v. Superior Court*, 436 U.S. 84, 56 L. Ed. 2d 132, 98 S. Ct. 1690 (1978) applies these principles to very similar facts and thus controls the disposition of this case. In *Kulko*, the Supreme Court held that the California courts lacked in personam jurisdiction over a father residing in New York when his only contact with California was that he agreed to let his daughter live in California with her mother. The

California Supreme Court ruled that it had jurisdiction over the father for purposes of deciding the mother's petition to have the father's child support obligation increased. It reasoned that the father's act of sending his daughter to live with her mother in California was an act or omission outside the state which caused an "effect" in that state, and which thereby rendered the California courts' exercise of jurisdiction over him reasonable. *Kulko*, 436 U.S. at 89. The Supreme Court rejected that analysis, explaining that the "effects" test relied on by the lower court "was intended to reach wrongful activity outside of the State causing injury within the State". 436 U.S. at 96. The Court further stated:

> There is no claim that appellant has visited physical injury on either property or persons within the State of California. Cf. *Hess* v. *Pawloski*, 274 U. S. 352[, 71 L. Ed. 1091, 47 S. Ct. 632] (1927). The cause of action herein arises, not from the defendant's commercial transactions in interstate commerce, but rather from his personal, domestic relations. It thus cannot be said that appellant has sought a commercial benefit from solicitation of business from a resident of California that could reasonably render him liable to suit in state court; appellant's activities cannot fairly be analogized to an insurer's sending an insurance contract and premium notices into the State to an insured resident of the State. Cf. *McGee* v. *International Life Insurance Co.*, 355 U. S. 220[, 2 L. Ed. 2d 223, 78 S. Ct. 199] (1957).

*Kulko*, 436 U.S. at 96-97.

The Court also determined that the basic equities of the situation favored New York as the most suitable forum. The controversy between the parties arose from the parents' separation, which occurred in New York, the mother was seeking modification of an agreement that the parties entered into in New York, the father had remained in New York, and it was the mother who chose to move the children to California with no more than the father's acquiescence. *Kulko*, 436 U.S. at 97-98.

While the Court acknowledged the State of California's interest in protecting the welfare of its minor residents and its legitimate interest in ensuring their support without

unduly disrupting their lives, it determined that these interests were already being served by California's participation in the Revised Uniform Reciprocal Enforcement of Support Act of 1968 (URESA). The Court explained that under URESA, to which New York was also a signatory, a California resident could petition for child support in California, obtain an adjudication in the state of the alleged obligor's residence, and neither party would have to leave his or her own state. 436 U.S. at 98-100.

*Kulko* clearly stands for the proposition that a parent's failure to pay child support alone is an insufficient basis upon which to predicate long-arm jurisdiction under an "effects" test or tort analysis. As in *Kulko*, Ms. Yocum has not alleged that Mr. Yocum has caused any physical injury to their children. Nor has she alleged that he has obtained an economic benefit as a result of his contacts with the forum state. While his alleged failure to pay child support has certainly benefited him financially, that benefit has no relationship to Washington as the forum state.

Although practical considerations might favor Washington as the appropriate forum for entertaining the action,[3] Washington and Texas are signatories to URESA. *See* RCW 26.21.010 *et seq.*; Tex. Fam. Code Ann. §§ 21.01 to 21.66 (West 1986). Washington's interests in protecting the welfare of its children are served by the State's participation in URESA. *Kulko*, 436 U.S. at 98-100. Considering that Ms. Yocum can petition for modification of the support order in Texas or Oklahoma, where the order was last modified, that she unilaterally decided to move the children to Washington, that Mr. Yocum has no contacts with Washing-

---

[3]Child support was originally ordered as part of a Missouri divorce decree, and the order was later modified by an Oklahoma court. However, neither of these states appears to be a suitable forum for modification because neither party lives there. Mr. Yocum resides in Texas where he is stationed for military duty. Ms. Yocum has never lived in Texas, and she has no contacts with that state. Because Mr. Yocum's military career potentially requires him to change residences frequently, it could prove difficult for Ms. Yocum to petition for modification of support in Texas.

ton other than his failure to pay child support, and that there is no showing that it would be less convenient for Ms. Yocum to travel to present her case than for Mr. Yocum, we cannot conclude that Washington is a "fair forum" in which to litigate the underlying controversy. *Kulko*, 436 U.S. at 100. *See also DiBernardo-Wallace v. Gullo*, 34 Wn. App. 362, 366, 661 P.2d 991 (1983) (holding that assertion of jurisdiction would offend traditional notions of fair play and substantial justice where alleged fraudulent transaction was a single, isolated incident which had an "effect" in Washington only because the plaintiff chose to reside here).

*In re Miller*, 86 Wn.2d 712, 548 P.2d 542 (1976), on which Ms. Yocum relies, is readily distinguishable from this case. In *Miller*, the father, an Idaho resident, had brought his four children, "ill-clad and in an unkempt condition", to live with their impoverished mother in Washington. 86 Wn.2d at 715. The mother then petitioned for custody and child support. The court determined that the father's failure to pay child support constituted a purposeful act in the forum state and that the father should have reasonably foreseen that his failure to support his children would result in the mother's petition for legal custody. *Miller*, 86 Wn.2d at 719-20. This factor, considered most important to the *Miller* court in its "fair play and substantial justice" analysis, is absent in this case. *Miller*, at 720-24. Unlike Mr. Miller, Mr. Yocum did not bring his children to Washington. Nor did he commit any other purposeful act in the forum state. *See Hogan v. Johnson*, 39 Wn. App. 96, 100, 692 P.2d 198 (1984) ("a nonphysical loss suffered in Washington is not sufficient in itself to confer jurisdiction"). Therefore, the trial court erred in concluding that its exercise of in personam jurisdiction was proper under the long-arm statute and the Fourteenth Amendment.

█ Mr. Yocum also contends that he is entitled to attorney fees expended both at trial and on appeal. He relies on RCW 4.28.185(5), which reads:

In the event the defendant is personally served outside the state on causes of action enumerated in this section, and prevails in the action, there may be taxed and allowed to the defendant as part of the costs of defending the action a reasonable amount to be fixed by the court as attorneys' fees.

This statute "authorizes an award of attorney fees when a foreign defendant, sued under the long-arm statute, obtains a dismissal for want of personal jurisdiction." *Scott Fetzer Co. v. Weeks*, 114 Wn.2d 109, 124, 786 P.2d 265 (1990); *accord Walker v. Bonney-Watson Co.*, 64 Wn. App. 27, 823 P.2d 518 (1992) (holding that the dismissal of the plaintiff's action against the defendant on jurisdictional grounds entitled the defendant to reasonable attorney fees under RCW 4.28.185(5) and RAP 18.1).[4] Accordingly, Mr. Yocum is entitled to recoup the amount that reasonably should have been incurred in presenting the jurisdictional defense. *Fetzer*, 114 Wn.2d at 122-23.

The judgment is reversed and remanded for determination of an appropriate award of attorney fees.

COLEMAN and GROSSE, JJ., concur.

Reconsideration denied May 12, 1994.

---

[4]Where the courts have denied attorney fees under RCW 4.28.185(5), they have based the denial on the conclusion that the defendant had more than minimum contacts with the forum state. *See Chemical Bank v. WPPSS*, 104 Wn.2d 98, 104, 702 P.2d 128 (1985); *State v. O'Connell*, 84 Wn.2d 602, 607, 528 P.2d 988 (1974).