# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON,

        Appellant,

    v.

AU OPTRONICS CORPORATION; AU OPTRONICS CORP., AMERICA; CHIMEI INNOLUX CORPORATION; CHI MEI OPTOELECTRONICS USA, INC.; EPSON IMAGING DEVICES CORPORATION; EPSON ELECTRONICS AMERICA, INC.; HITACHI, LTD.; HITACHI DISPLAYS, LTD.; HITACHI ELECTRONIC DEVICES (USA), INC.; SAMSUNG ELECTRONICS CO., LTD.; SAMSUNG SEMICONDUCTOR, INC.; SAMSUNG ELECTRONICS AMERICA, INC.; SHARP CORPORATION; SHARP ELECTRONICS CORPORATION; TOSHIBA CORPORATION; TOSHIBA AMERICA ELECTRONICS COMPONENTS, INC., TOSHIBA AMERICA INFORMATION SYSTEMS, INC., and TOSHIBA MOBILE DISPLAY TECHNOLOGY CO., LTD., F/K/A TOSHIBA MATSUSHITA DISPLAY TECHNOLOGY CO.,

        Defendants,

LG DISPLAY CO., LTD.; LG DISPLAY AMERICA, INC.,

        Respondents.

NO. 69318-2-I

DIVISION ONE

PUBLISHED OPINION

FILED: May 5, 2014

LEACH, J. — In this case we consider the due process limitations on a Washington court's exercise of personal jurisdiction over two foreign corporations, LG Display Co. Ltd. and LG Display America Inc. (collectively LG Display). LG Display manufactures and distributes components for retail consumer goods that third parties mass-market throughout the United States. It does not manufacture or distribute any component within the state of Washington.

After LG Display admitted participating in a worldwide conspiracy to fix the prices of LCD (liquid crystal display) panels, the State sued it in King County Superior Court. The State alleged that the conspiracy resulted in higher prices for Washington citizens and state agencies that purchased products containing these panels. The State appeals the trial court's dismissal of LG Display for lack of personal jurisdiction. The State also challenges the court's award of attorney fees to LG Display under RCW 4.28.185(5). Because the State alleges sufficient minimum contacts with this state for due process to allow a Washington court to exercise specific jurisdiction over LG Display for harm allegedly caused here by its conspiracy and LG Display fails to show that this exercise of jurisdiction would be constitutionally unreasonable, we reverse and remand.

## FACTS

LG Display Co. Ltd. is a Korean corporation with its principal place of business in Seoul, South Korea. It has an American subsidiary, LG Display America Inc., located in San Jose, California. LG Display designs and manufactures thin film transistor LCD panels. LG Display sells these flat screen LCD panels to original equipment manufacturers, systems integrators, original design manufacturers, and resellers.[1] Many of these third parties integrate the flat screens into computer monitors, laptop computers, televisions, mobile phones, and other finished products that they sell to indirect purchasers—consumers who purchase the finished products from retailers.

LG Display is not licensed or qualified to do business in Washington state. It maintains no offices, real property, telephone listing, mailing address, assets, employees, or designated agent for service of process in Washington.

LG Display pleaded guilty in federal court to participating in a price-fixing scheme from the late 1990s until 2006.[2] In August 2010, the Washington State

---

[1] An original equipment manufacturer produces products using components purchased from other companies and sells the products, such as computers, under its own brand name.

[2] In re TFT-LCD (Flat Panel) Antitrust Litig., 267 F.R.D. 291 (N.D. Cal. 2010), abrogated on other grounds by In re ATM Fee Antitrust Litig., 686 F.3d 741 (9th Cir. 2012). Numerous direct purchasers and indirect purchasers filed separate class actions in federal courts around the United States. The Joint Panel on Multidistrict Litigation consolidated all of these federal court actions in the Northern District of California for pretrial purposes, In re TFT-LCD (Flat

attorney general sued 20 defendants, including LG Display, in the name of the State and as parens patriae on behalf of consumers residing in the state. In its complaint, the State alleged that from at least January 1, 1998, through at least December 1, 2006, LG Display participated in a worldwide conspiracy to fix the prices of LCD panels that resulted in higher prices for Washington citizens and state agencies that purchased products containing these panels. It claimed that LG Display manufactured, marketed, sold, and/or distributed LCD panels and LCD products to customers throughout the United States and in Washington state. The State's complaint contained the following statement about the court's jurisdiction and venue:

> 5. This action alleges violations of the Washington Consumer Protection Act ("CPA"), RCW 19.86. Jurisdiction exists pursuant to RCW 19.86.160.
> 6. Venue is proper in King County because the Plaintiff resides therein; a significant portion of the acts giving rise to this action occurred in King County; the Defendants and their co-conspirators [sic] activities were intended to, and did have a substantial and foreseeable effect on U.S. and Washington State trade or commerce; the conspiracy affected the prices of LCD panels and LCD products purchased in Washington; and all Defendants knew or expected that products containing their LCD panels would be sold in the U.S. and into Washington.

---

Panel) Antitrust Litig., MDL Docket No. 1827. Washington was not a party to this litigation.

The State sought injunctive relief, civil penalties, damages for state agencies, and restitution for consumers.[3]

LG Display moved to dismiss the State's complaint, claiming that it did not have "the continuous and systematic contacts with Washington necessary to support general jurisdiction." It also alleged that the State's claims did not support specific jurisdiction because "they do not arise from any conduct by [LG Display] in Washington. The alleged conspiracy took place outside of Washington State."

To resolve the personal jurisdiction issue, the trial court considered the following allegations.[4] LG Display Co. Ltd. sold its LCD panels to a particular global consumer electronics brand, which sold computer monitors and televisions containing these panels throughout the United States and in Washington "by making use of 'key electronic appliance distribution chains in the U.S.'"[5] Another Washington-based consumer electronics retailer purchased products containing LG Display's LCD panels from the same global consumer electronics brand. In

---

[3] Several defendants removed the case to federal court in September 2010. The district court held that removal was not proper, and the United States Court of Appeals for the Ninth Circuit affirmed and remanded the case to state court. Washington v. Chimei Innolux Corp., 659 F.3d 842 (9th Cir. 2011).

[4] We consider only the facts alleged to have occurred within the conspiracy period.

[5] Because the trial court granted the State and LG Display's motion to seal, we do not use the names of specific businesses or companies that purchased or sold LG Display's LCD panels or products containing these panels.

2002, 2003, and 2004, sales by LG Display Co. Ltd. to this global consumer electronics brand accounted for 19.4 percent, 25.1 percent, and 19.3 percent, respectively, of its revenues.

LG Display America Inc. sold over $600 million worth of LCD panels to a particular original equipment manufacturer between 2001 and 2005. Between 2001 and 2007, the State purchased "in excess of 100 Million dollars of product . . . . includ[ing] LCD Products" from this same particular original equipment manufacturer. In 2003, this manufacturer's purchases accounted for 10 percent or more of net sales by LG Display America Inc. Also in 2003, LG Display Co. Ltd. entered into a master purchase agreement with this particular original equipment manufacturer. The purchase agreement stated that LG Display Co. Ltd. agreed to obtain and retain U.S. regulatory approval for its products. It also contained an indemnification provision obligating LG Display Co. Ltd. to "defend, indemnify, and hold harmless" this manufacturer, as well as the manufacturer's customers.[6]

Although LG Display Co. Ltd. had no direct sales to Washington consumers between January 1, 2001, and October 31, 2011,[7] LG Display America Inc. sold one LCD panel to Bell Microproducts USA, a former computer

_____

[6] The State did not name this manufacturer in its complaint.
[7] The record contains no information about any of LG Display's activities outside of these dates.

wholesaler, in Washington in November 2006.[8] From July 2001 through March 2003, LG Display America Inc. sold 84 units in 15 separate transactions to General Dynamics Itronix Corporation, a mobile computer manufacturer.[9]

Between January 1, 2001, and October 31, 2011, LG Display Co. Ltd. made pass-through shipments of 14,348 units of LCD panels to the Port of Tacoma. LG Display Co. Ltd. sold these shipments in European markets. It neither shipped nor sold these panels to any customers in Washington. LG Display Co. Ltd. or its non-U.S. subsidiaries negotiated the contracts for these shipments with companies outside of Washington.

Between 2001 and 2010, representatives from LG Display Co. Ltd. made 13 trips to Washington to meet with representatives from the Microsoft Corporation and to perform market research. LG Display Co. Ltd. states that "[t]he majority of these trips included visits to several states, and the duration of the Washington visit was generally one or two days." LG Display Co. Ltd. also states that these meetings with Microsoft resulted in no business. Between 2001 and 2010, representatives from LG Display America Inc. made 26 business trips

---

[8] The total value of this sale was $148.

[9] The total value of these sales was $23,500. The State's brief indicates that the sales totaled $178,000, but that calculation appears incorrect. LG Display asserts, "Bell's and Itronix's claims were already resolved in the multidistrict litigation and resellers are not included in the State's alleged parens patriae class."

to Washington to meet with representatives from Microsoft, Best Buy, Target, Itronix, Costco, and Rockwell/APC.

The trial court granted LG Display's motion to dismiss for lack of personal jurisdiction. The court relied upon the United State Supreme Court's opinion in J. McIntyre Machinery Ltd. v. Nicastro[10] and concluded,

> [T]here is no "something more", [sic] no state related design, advertising, or marketing directed to Washington, no showing that the LG Defendants have purposefully availed themselves of the privilege of conducting themselves in Washington, or have delivered their product into the stream of commerce with the expectation that it would be purchased by Washington users. . . . Under the facts alleged, a finding of specific jurisdiction does not satisfy due constitutional process.

The court entered a final judgment as to LG Display's motion to dismiss for lack of personal jurisdiction. Later, the court granted LG Display's application for attorney fees in concept, concluding, "Defendants are entitled to fees and costs pursuant to RCW 4.28.185(5)."[11]

The State appeals.[12]

---

[10] ___ U.S. ___, 131 S. Ct. 2780, 2792, 180 L. Ed. 2d 765 (2011) (Breyer, J., concurring in the judgment).

[11] The court noted, "The burden is on the petitioner to provide documentation sufficient for the court to determine the reasonableness and necessity of the fees requested. Such has not been provided. . . . Defendants may elect to have this determination made upon the resolution of the [S]tate's appeal of this issue."

[12] See RAP 2.4(g) ("An appeal from a decision on the merits of a case brings up for review an award of attorney fees entered after the appellate court accepts review of the decision on the merits.").

STANDARD OF REVIEW

"When the trial court considers matters outside the pleadings on a motion to dismiss for lack of personal jurisdiction, we review the trial court's ruling under the de novo standard of review for summary judgment."[13] We review the facts and reasonable inferences drawn from the facts in the light most favorable to the nonmoving party.[14] "For purposes of determining jurisdiction, this court treats the allegations in the complaint as established."[15] The plaintiff bears the burden of establishing a prima face case that jurisdiction exists.[16] We apply a two-part review to awards or denials of attorney fees: (1) we review de novo whether a legal basis exists for awarding attorney fees by statute, under contract, or in equity, and (2) we review the decision to award fees and the reasonableness of any attorney fee award for abuse of discretion.[17]

---

[13] Freestone Capital Partners L.P. v. MKA Real Estate Opportunity Fund I, LLC, 155 Wn. App. 643, 653, 230 P.3d 625 (2010) (citing CTVC of Haw. Co. v. Shinawatra, 82 Wn. App. 699, 707-08, 919 P.2d 1243 (1996)).

[14] Freestone Capital Partners, 155 Wn. App. at 653-54 (citing CTVC of Haw., 82 Wn. App. at 708).

[15] Freestone Capital Partners, 155 Wn. App. at 654 (citing CTVC of Haw., 82 Wn. App. at 708).

[16] In re Marriage of David-Oytan, 171 Wn. App. 781, 798, 288 P.3d 57 (2012) (citing John Does v. CompCare, Inc., 52 Wn. App. 688, 693, 763 P.2d 1237 (1988); In re Marriage of Yocum, 73 Wn. App. 699, 703, 870 P.2d 1033 (1994)), review denied, 177 Wn.2d 1017 (2013).

[17] Gander v. Yeager, 167 Wn. App. 638, 647, 282 P.3d 1100 (2012).

ANALYSIS

Personal Jurisdiction

A court may exercise general or specific personal jurisdiction over a nonresident defendant.[18] A court may exercise general jurisdiction if a nonresident defendant "is doing business in this state on a substantial and continuous basis."[19] A court may exercise specific jurisdiction over a nonresident defendant "based on much more limited contacts with Washington, but specific jurisdiction extends only to causes of action that arise out of those limited contacts."[20]

The State claims specific jurisdiction over LG Display under RCW 19.86.160, the long-arm provision of the Consumer Protection Act (CPA), chapter 19.86 RCW:

> Personal service of any process in an action under this chapter may be made upon any person outside the state if such person has engaged in conduct in violation of this chapter which has had the impact in this state which this chapter reprehends. Such persons shall be deemed to have thereby submitted themselves to the

---

[18] FutureSelect Portfolio Mgmt., Inc. v. Tremont Grp. Holdings, Inc., 175 Wn. App. 840, 886, 309 P.3d 555 (2013) (citing CTVC of Haw., 82 Wn. App. at 708), review granted, 179 Wn.2d 1008 (2014).

[19] FutureSelect Portfolio Mgmt., 175 Wn. App. at 886 (citing CTVC of Haw., 82 Wn. App. at 708).

[20] FutureSelect Portfolio Mgmt., 175 Wn. App. at 886 (citing CTVC of Haw., 82 Wn. App. at 709).

jurisdiction of the courts of this state within the meaning of RCW 4.28.180 and 4.28.185.[21]

This statute extends the jurisdiction of Washington courts to persons outside its borders.[22] RCW 19.86.160 "is intended to operate to the fullest extent permitted by due process."[23] A court's exercise of jurisdiction under RCW 19.86.160 must satisfy both the statute's requirements and due process.[24] LG limits its jurisdictional challenge to the State's alleged attempt to violate due process.

The United States Supreme Court examines three elements to determine if personal jurisdiction satisfies due process:

> (1) that purposeful "minimum contacts" exist between the defendant and the forum state; (2) that the plaintiff's injuries "arise out of or relate to" those minimum contacts; and (3) that the exercise of jurisdiction be reasonable, that is, that jurisdiction be consistent with notions of "fair play and substantial justice."[25]

---

[21] RCW 19.86.020 states, "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." The State does not claim that Washington can exercise general jurisdiction over LG Display.

[22] David-Oytan, 171 Wn. App. at 798 (citing Yocum, 73 Wn. App. at 703). Our Supreme Court applies a similar analysis to the CPA's long-arm provision, RCW 19.86.160, and to the general long-arm statute, RCW 4.28.185. See State v. Reader's Digest Ass'n, 81 Wn.2d 259, 276-78, 501 P.2d 290 (1972).

[23] David-Oytan, 171 Wn. App. at 798 (interpreting RCW 4.28.185).

[24] David-Oytan, 171 Wn. App. at 798 (interpreting RCW 4.28.185) (citing Yocum, 73 Wn. App. at 702).

[25] Grange Ins. Ass'n v. State, 110 Wn.2d 752, 758, 757 P.2d 933 (1988) (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472-78, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985)).

If the plaintiff satisfies the first two prongs of this test, the burden shifts to the defendant "'to set forth a compelling case that the exercise of jurisdiction would not be reasonable.'"[26]

The State alleges that Washington's exercise of jurisdiction does not violate due process because (1) LG Display "purposefully delivered hundreds of millions of panels to the United States which were purchased in finished products in Washington State," (2) "[t]his action arises from [LG Display's] [c]ontacts with Washington," and (3) "[t]he exercise of Personal Jurisdiction over [LG Display] comports with traditional notions of fair play and substantial justice."

LG Display asserts that the due process clause of the Fourteenth Amendment to the United States Constitution prohibits a Washington court from exercising personal jurisdiction over it because it has not purposefully availed itself of the privilege of conducting business in Washington.

To satisfy the first prong of the specific jurisdiction test, a plaintiff may show either that the defendant's activities constituted "purposeful availment" of the forum state's laws or the defendant's "purposeful direction" toward the forum state.[27] This requirement ensures that a defendant will not be haled into a

---

[26] C.S. v. Corp. of the Catholic Bishop of Yakima, No. 13-CV-3051, 2013 WL 5373144, at *3 (E.D. Wash. Sept. 25, 2013) (internal quotation marks omitted) (quoting CollegeSource, Inc. v. AcademyOne, Inc., 653 F.3d 1066, 1076 (9th Cir. 2011)).

[27] C.S., 2013 WL 5373144, at *3 (citing Yahoo! Inc. v. Le Ligue Contre La Racisme et L'Antisemitisme, 433 F.3d 1199, 1206 (9th Cir. 2006) (en banc))).

jurisdiction solely as the result of random, fortuitous, or attenuated circumstances.[28]

The State claims that LG Display

> purposefully availed itself in Washington by releasing hundreds of millions of its LCD panels into the stream of commerce with the expectation and intent that they would be incorporated into finished goods to be sold throughout the United States. LGD's conduct spanned many years, and it targeted as broad a market as possible by selling panels both to companies that directly do business in the U.S. through retail distribution and through its U.S. subsidiary.

The State relies upon the United States Supreme Court's decision in World-Wide Volkswagen Corp. v. Woodson.[29] There, the Court held, "The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State."

LG Display argues that if Washington consumers purchased electronic products containing LG Display's LCD panels, these purchases "resulted from the independent actions of products manufacturers and retailers. The State does not and cannot identify a single sale of laptops, televisions, or other electronic products from LG Display to Washington consumers. Nor can it show that LG

---

[28] Burger King, 471 U.S. at 475.
[29] 444 U.S. 286, 297-98, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980).

Display directed or controlled any such sales. They did not."[30] LG Display

further contends,

> Under the narrowest holding of J. McIntyre, simply placing a product into the stream of commerce and targeting the general U.S. market does not establish the forum contact required to satisfy due process. The trial court's ruling that "something more" is required to assert personal jurisdiction over [LG Display] is supported by J. McIntyre and by Washington law.

In J. McIntyre, a British manufacturer, J. McIntyre Machinery Ltd., sold its

metal shearing machines to an independent U.S. distributor, which marketed the

machines throughout the United States.[31] The distributor sold one machine to a

company in New Jersey.[32] This machine allegedly malfunctioned and injured the

plaintiff in New Jersey. The worker sued McIntyre in New Jersey.[33] The New

Jersey Supreme Court held that New Jersey courts could exercise personal

jurisdiction over the manufacturer because the manufacturer "knew or reasonably

---

[30] In a 2004 filing with the United States Securities and Exchange Commission, LG Display Co. Ltd. stated, "We negotiate directly with our end-brand customers concerning the terms and conditions of the sales, but typically ship our display panels to designated systems integrators at the direction of these end-brand customers."

[31] J. McIntyre, 131 S. Ct. at 2786 (plurality opinion).

[32] J. McIntyre, 131 S. Ct. at 2786 (plurality opinion). The plurality opinion stated that "no more than four machines . . . ended up in New Jersey." J. McIntyre, 131 S. Ct. at 2786 (plurality opinion). Justice Breyer's opinion concurring in the judgment stated, "The American Distributor on one occasion sold and shipped one machine to a New Jersey customer." J. McIntyre, 131 S. Ct. at 2791 (Breyer, J., concurring in the judgment). As explained below, Justice Breyer's opinion controls.

[33] J. McIntyre, 131 S. Ct. at 2786 (plurality opinion).

should have known 'that its products are distributed through a nationwide distribution system that might lead to those products being sold in any of the fifty states.'"[34]

The United States Supreme Court reversed.[35] The case produced no majority opinion. Four justices signed a plurality opinion authored by Justice Kennedy. Two signed a concurring opinion authored by Justice Breyer. These six justices agreed that a foreign manufacturer's sale of its products through an independent, nationwide distribution system is not sufficient, without more, for a state to assert personal jurisdiction over the manufacturer when only one of its products ends up in a state and causes injury there.[36] But the two opinions differed in their reasoning.

Justice Kennedy, joined by Chief Justice Roberts, Justice Scalia, and Justice Thomas, explained that "it is the defendant's actions, not his expectations, that empower a State's courts to subject him to judgment."[37] The fact that it was foreseeable a defendant's products might be distributed in the

---

[34] J. McIntyre, 131 S. Ct. at 2786 (plurality opinion) (quoting Nicastro v. McIntyre Machinery America, Ltd., 201 N.J. 48, 76, 987 A.2d 575 (2010)).

[35] See J. McIntyre, 131 S. Ct. at 2791 (plurality opinion) (Breyer, J., concurring in the judgment).

[36] J. McIntyre, 131 S. Ct. at 2791 (plurality opinion); J. McIntyre, 131 S. Ct. at 2792 (Breyer, J., concurring in the judgment).

[37] J. McIntyre, 131 S. Ct. at 2789 (plurality opinion).

forum state or all 50 states was not sufficient; the plurality would require evidence that the foreign defendant "targeted" the forum state in some way.[38]

Justice Kennedy identified two principles. First, determining personal jurisdiction "requires a forum-by-forum, or sovereign-by-sovereign, analysis. The question is whether a defendant has followed a course of conduct directed at the society or economy existing within the jurisdiction of a given sovereign, so that the sovereign has the power to subject the defendant to judgment concerning that conduct."[39] Second, "[b]ecause the United States is a distinct sovereign, a defendant may in principle be subject to the jurisdiction of the courts of the United States but not of any particular State."[40] Despite evidence that the British manufacturer targeted the United States, no evidence showed that it targeted New Jersey specifically.[41] Accordingly, the plurality concluded that New Jersey lacked personal jurisdiction over the British manufacturer.[42]

Justice Breyer, joined by Justice Alito, cited the Court's opinions in World-Wide Volkswagen[43] and Asahi Metal Industry Co. v. Superior Court[44] as support for the proposition that "a single sale of a product in a State does not constitute

---

[38] J. McIntyre, 131 S. Ct. at 2788 (plurality opinion).
[39] J. McIntyre, 131 S. Ct. at 2789 (plurality opinion).
[40] J. McIntyre, 131 S. Ct. at 2789 (plurality opinion).
[41] J. McIntyre, 131 S. Ct. at 2790 (plurality opinion).
[42] J. McIntyre, 131 S. Ct. at 2790-91 (plurality opinion).
[43] 444 U.S. at 297-98.
[44] 480 U.S. 102, 117, 122, 107 S. Ct. 1026, 94 L. Ed. 2d 92 (1987).

an adequate basis for asserting jurisdiction over an out-of-state defendant, even if that defendant places his goods in the stream of commerce, fully aware (and hoping) that such a sale will take place."[45] Because the evidence established no connection between the British manufacturer and New Jersey other than a "single isolated sale" achieved as a result of the independent distributor's efforts, Justice Breyer agreed with the plurality that the British manufacturer's contacts with New Jersey were constitutionally insufficient to support New Jersey's assertion of jurisdiction.[46]

Finally, Justice Ginsburg, joined by Justices Sotomayor and Kagan, dissented. Justice Ginsburg concluded that when the British manufacturer "dealt with the United States as a single market" and sought to have its products distributed nationwide, due process did not prevent the state where the injury occurred from holding the manufacturer accountable.[47] The fact that the distributor sold only one machine in New Jersey did not preclude jurisdiction over the manufacturer when that machine gave rise to the plaintiff's claim.[48]

---

[45] J. McIntyre, 131 S. Ct. at 2792 (Breyer, J., concurring in the judgment).
[46] J. McIntyre, 131 S. Ct. at 2791-92 (Breyer, J., concurring in the judgment).
[47] J. McIntyre, 131 S. Ct. at 2801-02 (Ginsburg, J., dissenting).
[48] J. McIntyre, 131 S. Ct. at 2804 (Ginsburg, J., dissenting).

In <u>Marks v. United States</u>,[49] the United States Supreme Court held, "When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgment[ ] on the narrowest grounds.'" Applying this rule, Justice Breyer's concurring opinion, deciding the case on narrower grounds than the plurality's, controls in <u>J. McIntyre</u>.

We consider Justice Breyer's reasoning:

> Here, the relevant facts found by the New Jersey Supreme Court show no "regular . . . flow" or "regular course" of sales in New Jersey; and there is no "something more," such as special state-related design, advertising, advice, marketing, or anything else. Mr. Nicastro, who here bears the burden of proving jurisdiction, has shown no specific effort by the British Manufacturer to sell in New Jersey. He has introduced no list of potential New Jersey customers who might, for example, have regularly attended trade shows [in other states at which the British Manufacturer appeared and solicited sales]. And he has not otherwise shown that the British Manufacturer "purposefully avail[ed] itself of the privilege of conducting activities" within New Jersey, or that it delivered its goods in the stream of commerce "with the expectation that they will be purchased" by New Jersey users.[50]

---

[49] 430 U.S. 188, 193, 97 S. Ct. 990, 51 L. Ed. 2d 260 (1977) (quoting <u>Gregg v. Georgia</u>, 428 U.S. 153, 169 n.15, 96 S. Ct. 2909, 49 L. Ed. 2d 859 (1976) (opinion of Stewart, Powell, & Stevens, JJ.)); <u>accord</u> <u>Panetti v. Quarterman</u>, 551 U.S. 930, 949, 127 S. Ct. 2842, 168 L. Ed. 2d 662 (2007) (following <u>Marks</u>); <u>Davidson v. Henson</u>, 135 Wn.2d 112, 128, 954 P.2d 1327 (1998) (same).

[50] <u>J. McIntyre</u>, 131 S. Ct. at 2792 (Breyer, J., concurring in the judgment) (some alterations in original) (quoting <u>World-Wide Volkswagen</u>, 444 U.S. at 297-98). In relying upon the phrases "'regular . . . flow' or 'regular course' of sales," Justice Breyer cited Justice Brennan's and Justice Stevens's separate opinions

Absent evidence of a "'regular . . . flow' or 'regular course' of sales," in New Jersey, or evidence of "'something more,' such as special state-related design, advertising, advice, marketing, or anything else," Justice Breyer found the record insufficient to support personal jurisdiction.[51]

Further, Justice Breyer noted the he "d[id] not agree with the plurality's seemingly strict no-jurisdiction rule" or the "absolute approach adopted by the New Jersey Supreme Court" authorizing a state to exercise jurisdiction over an out-of-state manufacturer as long as the manufacturer knows or should know that its products "'are distributed through a nationwide distribution system that might lead to those products being sold in any of the fifty states.'"[52] The New Jersey Supreme Court's rule did not focus on the defendant's relationship with the forum, leading to the possibility that jurisdiction would rest "upon no more than the occurrence of a product-based accident in the forum State."[53] New Jersey's rule would also result in jurisdiction over all out-of-state manufacturers who distribute goods nationally without regard to the fairness of making them appear

---

in Asahi, 480 U.S. at 117, 122, which he referenced earlier in his opinion. J. McIntyre, 131 S. Ct. at 2792 (Breyer, J., concurring in the judgment).

[51] J. McIntyre, 131 S. Ct. at 2792 (alteration in original) (Breyer, J., concurring in the judgment).

[52] J. McIntyre, 131 S. Ct. at 2793 (Breyer, J., concurring in the judgment) (quoting Nicastro, 201 N.J. at 76-77).

[53] J. McIntyre, 131 S. Ct. at 2793 (Breyer, J., concurring in the judgment).

and defend in New Jersey.[54] Justice Breyer explained that although New Jersey's rule might seem fair when applied to a large manufacturer that has the ability to appear and defend wherever its products cause injury—or to alleviate the risk of litigation by procuring insurance—this rule "may be fundamentally unfair" when applied to a small manufacturer selling its products through a national or international distributor.[55] New Jersey's approach would not only impose potentially undue burdens on small manufacturers selling only a few products in a state but would also require these manufacturers to anticipate and comply with the laws of every state.[56]

Here, the State cites various Washington cases it claims recognize that merely placing goods into a broad stream of commerce can constitute purposeful minimum contacts to establish personal jurisdiction.[57] With the exception of Grange Insurance Ass'n v. State,[58] our Supreme Court decided these cases before the United States Supreme Court decided World-Wide Volkswagen, Asahi, and J. McIntyre. Because this case requires us to apply federal

---

[54] J. McIntyre, 131 S. Ct. at 2793-94 (Breyer, J., concurring in the judgment).

[55] J. McIntyre, 131 S. Ct. at 2793-94 (Breyer, J., concurring in the judgment).

[56] J. McIntyre, 131 S. Ct. at 2794 (Breyer, J., concurring in the judgment).

[57] Griffiths & Sprague Stevedoring Co. v. Bayly, Martin & Fay, Inc., 71 Wn.2d 679, 684, 430 P.2d 600 (1967); Omstead v. Brader Heaters, Inc., 5 Wn. App. 258, 269-71, 487 P.2d 234 (1971), aff'd, 80 Wn.2d 720, 497 P.2d 1310 (1972); Reader's Digest Ass'n, 81 Wn.2d at 276-78; Grange, 110 Wn.2d at 761.

[58] 110 Wn.2d 752, 761, 757 P.2d 933 (1988).

constitutional law, we look to these more recent United States Supreme Court decisions for guidance. And, contrary to the State's argument, the court in Grange cited the United States Supreme Court's decisions in Burger King Corp. v. Rudzewicz[59] and Asahi in recognizing, "[T]here is no longer any doubt that a party asserting long-arm jurisdiction must show 'purposefulness' as part of the first due process element."[60] No recent Washington case applies a simple stream of commerce analysis.

Following the analysis of J. McIntyre adopted by the Oregon Supreme Court in Willemsen v. Invacare Corporation,[61] we hold that Washington may exercise personal jurisdiction over LG Display. In Willemsen, a Taiwanese company that manufactured battery chargers, CTE, supplied its products for installation in motorized wheelchairs built by an Ohio corporation, Invacare, which then sold the wheelchairs throughout the United States, including in Oregon.[62] Between 2006 and 2007, Invacare sold 1,166 motorized wheelchairs

---

[59] 471 U.S. 462, 476, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985) ("Once it has been decided that a defendant purposefully established minimum contacts within the forum State, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 320, 66 S. Ct. 154, 90 L. Ed. 95 (1945))).
[60] Grange, 110 Wn.2d at 760.
[61] 352 Or. 191, 282 P.3d 867 (2012), cert. denied, 133 S. Ct. 984 (2013).
[62] Willemsen, 352 Or. at 194.

in Oregon, nearly 95 percent of which came with CTE's battery chargers.[63] The plaintiffs sued CTE after their mother died in a fire allegedly caused by a defect in CTE's battery charger.[64] CTE challenged the Oregon court's exercise of personal jurisdiction, claiming that Invacare chose to sell its products in Oregon and that under J. McIntyre, "the mere fact that [CTE] may have expected that its battery chargers might end up in Oregon is not sufficient to give Oregon courts specific jurisdiction over it."[65]

The Oregon Supreme Court determined, "The sale of the CTE battery charger in Oregon that led to the death of plaintiffs' mother was not an isolated or fortuitous occurrence."[66] Relying on Justice Breyer's concurrence in J. McIntyre, the court concluded that "the sale of over 1,100 CTE battery chargers within Oregon over a two-year period shows a 'regular . . . flow' or 'regular course' of sales in Oregon" and thus established sufficient minimum contacts for an Oregon court to exercise specific jurisdiction over CTE.[67] The court stated, "Put

---

[63] Willemsen, 352 Or. at 196. The court noted, "It is unclear from the complaint whether Invacare itself sold its motorized wheelchairs in Oregon or whether it sold them through a distributor. . . . In CTE's view, the dispositive facts are that it did not sell its battery chargers directly in Oregon and that it did not otherwise have any direct contacts here." Willemsen, 352 Or. at 196 n.5.

[64] Willemsen, 352 Or. at 194.

[65] Willemsen, 352 Or. at 198.

[66] Willemsen, 352 Or. at 203.

[67] Willemsen, 352 Or. at 203-04 (alteration in original) (internal quotation marks omitted) (quoting J. McIntyre, 131 S. Ct. at 2792 (Breyer, J., concurring in the judgment)).

differently, the pattern of sales of CTE's battery chargers in Oregon establishes a 'relationship between the defendant, the forum, and the litigation, [such that] it is fair, in light of the defendant's contacts with [this] forum, to subject the defendant to suit [h]ere.'"[68] Courts in other jurisdictions have similarly distinguished J. McIntyre and held that a foreign defendant is subject to personal jurisdiction in the forum state based upon the volume of sales in that state.[69]

Similarly, the alleged sale in Washington of products containing LG Display panels at inflated prices was not an isolated or fortuitous occurrence. LG Display's alleged conduct plus a large volume of expected and actual sales established sufficient minimum contacts for a Washington court to exercise specific jurisdiction over it. LG Display understood the third parties would sell products containing its LCD panels throughout the United States, including large numbers of those products in Washington. LG Display Co. Ltd. sold its LCD

---

[68] Willemsen, 352 Or. at 207 (alterations in original) (internal quotation marks omitted) (quoting J. McIntyre, 131 S. Ct. at 2793 (Breyer, J., concurring in the judgment)).

[69] See, e.g., Graham v. Hamilton, No. 3:11-CV-609, 2012 WL 893748, at *4 (W.D. La. Mar. 15, 2012) (holding that "the McIntyre concurrence does not govern the facts of this case" because, unlike the single sale to New Jersey in that case the record showed that the foreign defendant "places over 800,000 vehicles into the U.S. market each year," many of which "would likely be sold in" the forum state); Ainsworth v. Cargotec USA, Inc., No. 2:10-CV-236, 2011 WL 4443626, at *7 (S.D. Miss. Sept. 23, 2011) (holding that the case was "remove[d] . . . from the scope of McIntyre's applicability" because the out-of-state defendant sold 203 forklifts to customers in the forum state over the previous decade, generating over $5.3 million in sales).

panels to a particular global consumer electronics manufacturer that sold products containing these panels nationwide and in Washington through national electronic appliance distribution chains. These sales accounted for approximately 19-25 percent of LG Display's annual revenues. Washington State purchased "in excess of 100 Million dollars of product . . . includ[ing] LCD Products" from this manufacturer. This original equipment manufacturer also entered into a master purchase agreement with LG Display Co. Ltd. in which the company agreed to obtain and maintain all necessary U.S. regulatory approval. And LG Display representatives met with various companies in Washington and in other states.

Although, "[t]o be sure, nationwide distribution of a foreign manufacturer's products is not sufficient to establish jurisdiction over the manufacturer when that effort results in only a single sale in the forum state,"[70] the record here shows that during the conspiracy period, various companies and retailers sold millions of dollars' worth of products containing LG Display's LCD panels in Washington. Sales to Washington consumers were not isolated; rather, they indicated a "'regular . . . flow' or 'regular course'" of sales in Washington. Further, the pattern of sales of products containing LG Display's LCD panels establishes a relationship between LG Display, Washington, and this litigation, such that it is

---

[70] Willemsen, 352 Or. at 203.

fair, in light of LG Display's contacts with Washington, to subject LG Display to suit here.

LG Display claims that Willemsen's reasoning "directly conflicts with Grange, which disclaimed those Washington cases that did not require a showing of 'purposefulness' to establish jurisdiction in tort cases." But, the Oregon Supreme Court's analysis relies upon Justice Breyer's rationale in J. McIntyre, which required showing purposefulness, and the court determined that the sales in Oregon were not "isolated or fortuitous."[71] Further, Grange predates the United States Supreme Court's more recent interpretations of the federal due process clause. We reject LG Display's claim.

Due process also requires the State to show this cause of action arises from LG Display's indirect sales to Washington consumers. The State claims, "Washington consumers and state agencies have been injured by paying supracompetitive prices for LCD products as a result of [LG Display's] price-fixing conduct." LG Display argues that consumers purchased LCD products from independent third parties. We agree with the State.[72] LG Display's admitted price manipulation allegedly inflated the price paid for those purchases.

---

[71] Willemsen, 352 Or. at 201 (quoting J. McIntyre, 131 S. Ct. at 2792 (Breyer, J., concurring in the judgment)).

[72] See In re W. States Wholesale Natural Gas Antitrust Litig., 715 F.3d 716, 742-43 (9th Cir. 2013) ("There is no question that the Plaintiffs' state antitrust claims arise out of the AEP Defendants' collusive manipulation of the gas price indices. In other words, their claims 'arise[ ] out of or relate[ ] to' the

Finally, LG Display must show that the exercise of personal jurisdiction would not be reasonable. Courts consider "the quality, nature, and extent of the defendant's activity in Washington, the relative convenience of the plaintiff and the defendant in maintaining the action here, the benefits and protection of Washington's laws afforded the parties, and the basic equities of the situation."[73] Because the trial court determined that LG Display's contacts were insufficient to establish personal jurisdiction, it did not address this element. Because we hold that the State showed both purposeful availment and relatedness, we address this third factor in the due process test.

As discussed above, the State claims that LG Display manufactured, marketed, sold, and/or distributed millions of LCD panels and LCD products to customers nationwide and in Washington during the course of the price-fixing conspiracy. In its complaint, the State alleged that LG Display "knew or expected that products containing their LCD panels would be sold in the U.S. and into Washington." LG Display representatives also traveled to Washington numerous times for business meetings and to perform market research. The fact that these

---

Defendants' alleged forum-related activities.") (alterations in original) (quoting Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004)), petition for cert. filed, 82 U.S.L.W. 3107 (U.S. Aug. 26, 2013) (No. 13-271).

[73] CTVC of Haw., 82 Wn. App. at 720 (citing DiBernardo-Wallace v. Gullo, 34 Wn. App. 362, 365-66, 661 P.2d 991 (1983)).

meetings resulted in no business does not discount LG Display's efforts to target Washington.

For the convenience element, LG Display argues, "Requiring LG Display to litigate in a state where they have no offices, employees, or other resources on its own presents a significant burden." Requiring LG Display to answer and defend in Washington would not pose an unfair burden. In a master purchase agreement, LG Display Co. Ltd. agreed that its products would comply with all U.S. regulatory requirements, which suggests its familiarity with applicable laws. This agreement also contained an indemnity provision, indicating that LG Display "anticipated the need to defend against [this] very sort of claim."[74] Again, representatives from LG Display traveled to Washington for business meetings and to perform market research.

The benefits and protections of Washington law favor the State. LG Display claims, "The State's strong interest in protecting its citizens, on its own, is an insufficient basis for finding jurisdiction." RCW 19.86.080(3) authorizes the State to bring a CPA action on behalf of Washington's indirect purchasers; these

_____

[74] See Willemsen, 352 Or. at 208 (master supply agreement provision agreeing to maintain certificate of insurance indicated that "CTE anticipated the need to defend against [this] very sort of claim"); see also Abel v. Montgomery Ward Co., 798 F. Supp. 322, 327 (E.D. Va. 1992) (manufacturer anticipated being haled into court in forums where its products were resold was obligated to purchase insurance to protect itself, reserved rights to defend its products, and agreed to indemnify Montgomery Ward).

-27-

consumers have no private right of action.[75] Our Supreme Court explained in State v. Reader's Digest Ass'n:[76]

> Respondent solicited Washington business and derived substantial profits from Washington residents by clearly illegal methods. It is the duty of the state to protect its residents from such unfair practices. If our courts are not open, the state will be without a remedy in any court and the Consumer Protection Act will be rendered useless.

LG Display allegedly solicited Washington business and derived substantial profits indirectly from Washington consumers as a result of its illegal actions, and no alternative forum exists for Washington consumers.[77]

Finally, equity weighs in the State's favor. LG Display contends, "[T]he State alleges conduct that occurred primarily in Asia and has provided no direct, related link to Washington residents." It also asserts, "[T]here is little risk that dismissing the LG Display companies from this case will limit the State's recovery at trial. Fifteen defendants remain in the case, and the State will likely argue that each defendant is joint and severally liable for all of its alleged injuries."

As the State notes, only an indirect relationship can exist between LG Display and Washington consumers who purchased finished goods containing

---

[75] See Blewett v. Abbott Labs., 86 Wn. App. 782, 790, 938 P.2d 842 (1997) ("We conclude that direct purchasers and the attorney general are the enforcers of antitrust law in Washington.").

[76] 81 Wn.2d 259, 278, 501 P.2d 290 (1972).

[77] The State concedes that if it were to file a federal action, it could ask the court to exercise pendant jurisdiction over its state law claim.

LG Display's products. Considering modern economic structures, it is unreasonable to expect that LG Display would target Washington consumers directly. Finding no jurisdiction could also encourage manufacturers to structure their businesses to avoid direct activity in Washington to avoid liability. LG Display should not avoid liability for any alleged harm simply because other defendants might provide compensation.

We conclude that requiring LG Display to appear and defend in Washington does not offend traditional notions of fair play and substantial justice. The trial court could, consistently with due process, require LG Display to appear in a Washington court and respond to the State's claims that its price-fixing conspiracy harmed Washington consumers by forcing them to pay higher prices for LCD products.

## Attorney Fees

The State also challenges the trial court's award of attorney fees to LG Display under RCW 4.28.185(5). Because LG Display no longer is a prevailing party at this point, we reverse the trial court's attorney fee award without addressing the State's argument.

## Amicus Curiae

Costco Wholesale Corporation, acting as amicus curiae, raises two issues not raised in the parties' briefing. Because "this court does not consider new

issues raised for the first time in an amicus brief,"[78] we do not address these issues.

CONCLUSION

Because Washington's exercise of jurisdiction in this case meets the requirements of due process, we reverse the trial court's dismissal of the State's action and its award of fees to LG Display. We remand this case for further proceedings consistent with this opinion.

_Leach, J._

WE CONCUR:

_Dwyer, ACJ_

_Becker, J_

---

[78] Protect the Peninsula's Future v. City of Port Angeles, 175 Wn. App. 201, 217, 304 P.3d 914 (citing Ruff v. King County, 125 Wn.2d 697, 704 n.2, 887 P.2d 886 (1995)), review denied, 178 Wn.2d 1022 (2013).