

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

CANDANCE NOLL, individually and as )
Personal Representative of the Estate )
of Donald Noll, Deceased, )
                              )    No. 71345-1-I
                              )
               Appellant,       )    DIVISION ONE
                              )
            v.                )
                              )

AMERICAN BILTRITE, INC.; AMETEK, )
INC.; BIRD INCORPORATED; )
BORGWARNER MORSE TEC, INC., as )
successor-by-merger to BORG- )
WARNER CORPORATION; CBS )
CORPORATION, a Delaware )
corporation, f/k/a VIACOM INC., )
successor by merger to CBS )    PUBLISHED OPINION
CORPORATION, a Pennsylvania )
corporation, f/k/a WESTINGHOUSE )    FILED: June 29, 2015
ELECTRIC CORPORATION; CERTAIN-)
TEED CORPORATION; CONWED )
CORPORATION; DOMCO PRODUCTS )
TEXAS INC.; FORD MOTOR )
COMPANY; GENERAL ELECTRIC )
COMPANY; GEORGIA-PACIFIC, LLC; )
HERCULES INCORPORATED; )
HONEYWELL INTERNATIONAL, INC.; )
INDUSTRIAL HOLDINGS CORPORA- )
TION, f/k/a THE CARBORUNDUM )
COMPANY; INGERSOLL-RAND )
COMPANY; J-M MANUFACTURING )
COMPANY, INC.; KAISER GYPSUM )
COMPANY, INC.; KELLY MOORE )
PAINT COMPANY, INC.; )
SABERHAGEN HOLDINGS, INC.; )

SIMPSON LUMBER COMPANY, LLC;  )
SIMPSON TIMBER COMPANY;        )
                               )
            Defendants,        )
                               )
SPECIAL ELECTRIC COMPANY, INC., )
                               )
            Respondent.        )
_____)

BECKER, J. — A Washington court may exercise specific personal jurisdiction over the nonresident supplier of raw asbestos used as a component of asbestos-cement pipe when the pipe, manufactured in California, enters the stream of commerce and is sold on a regular basis to buyers in Washington. The defendant supplier in this case did not specifically target Washington as a destination for its product and may not have actually known that its asbestos was ending up in Washington as a component of pipe. Nevertheless, the regular course of sales that brought the pipe into Washington satisfies the due process requirement for minimum contacts because it shows that the defendant purposefully availed itself of the protection of Washington's laws.

This appeal arises from Donald Noll's death caused by malignant pleural mesothelioma. Donald Noll died in 2013. Candace Noll is the representative of his estate. She alleges that Donald's mesothelioma developed due to his exposure to asbestos when he worked for a construction company in Port Orchard between 1977 and 1979. Before he died, Donald Noll testified that he was exposed to asbestos-cement dust on the job when he cut asbestos-cement pipe manufactured by the CertainTeed Corporation.

2

Candace Noll's complaint sought damages against CertainTeed, Special Electric Company Inc., and other defendants. The only defendant that is a party to this appeal is respondent Special Electric, a shell corporation. Special Electric has financial responsibility for the conduct of Special Materials, an asbestos broker that is now defunct. See Melendrez v. Superior Court, 215 Cal. App. 4th 1343, 1346-48, 1355-56, 156 Cal. Rptr. 3d 335, review denied, No. S211282 (Sup. Ct. July 17, 2013) (explaining the recent history and current status of Special Electric). For purposes of this appeal, we refer to Special Electric and the companies for which it has financial responsibility simply as "Special."

At all relevant times, Special was a Wisconsin corporation with its principal place of business in Milwaukee, Wisconsin. Special maintained offices and staff in as many as eight different states to sell and help facilitate the delivery of asbestos. It did not keep an office or staff in Washington.

Noll's complaint asserted specific personal jurisdiction over Special in King County under Washington's long-arm statute, RCW 4.28.185(1). Special entered a limited appearance and attended Donald Noll's preservation depositions in April 2013.

Special then moved to dismiss under CR 12(b)(2).[1] Noll opposed the motion, presenting as the sole issue whether Washington courts may exercise

---

[1] CR 12(b)(2) provides:
　　(b) How Presented. Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross claim, or third party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: . . .
　　(2) lack of jurisdiction over the person.

specific personal jurisdiction over Special under the stream-of-commerce doctrine. The trial court dismissed Noll's complaint, citing J. McIntyre Machinery, Ltd. v. Nicastro, __ U.S. __, 131 S. Ct. 2780, 180 L. Ed. 2d 765 (2011). Noll appeals.

When proceeding under CR 12(b)(2), we treat the allegations in the complaint as established. If the trial court considers materials outside the pleadings, as it did here, we review its decision under the de novo standard of summary judgment, taking all factual inferences in favor of the plaintiff. State v. AU Optronics, Corp., 180 Wn. App. 903, 920-25, 328 P.3d 919 (2014).

Reviewed in this light, the record shows that Special supplied asbestos to a CertainTeed manufacturing plant in Santa Clara, California. CertainTeed used the asbestos to make pipe that it shipped into Washington in substantial quantities. According to shipping invoices, the Santa Clara plant sent at least 55,000 linear feet of asbestos-cement pipe to buyers in Washington between 1977 and 1979, through at least 31 discrete shipments.

During that time period, Special supplied approximately 95 percent of the asbestos used at CertainTeed's Santa Clara plant to manufacture asbestos-cement pipe. In December 1977, Special contracted to supply CertainTeed's pipe division with approximately 4,000 tons of blue asbestos per year from 1978 until 1983. The contract is acknowledged in a letter from General Mining, a mining company in South Africa, agreeing to make that amount of blue asbestos available to Special for distribution to CertainTeed. Special arranged for 1,018

tons of blue asbestos obtained from General Mining to be delivered to CertainTeed's Santa Clara plant between 1977 and 1979.

In short, Special regularly supplied raw asbestos for the manufacture of pipe that moved into Washington through established channels of sale. The issue is whether such conduct is enough to permit a Washington court to exercise specific personal jurisdiction over Special, a nonresident defendant.

A court may exercise specific personal jurisdiction over a nonresident based on much more limited contacts with a forum state than would be required for the exercise of general personal jurisdiction. But specific jurisdiction extends only to causes of action that arise out of those limited contacts. AU Optronics, 180 Wn. App. at 913. Washington courts may exercise specific jurisdiction over an out-of-state defendant if authorized by our long-arm statute, RCW 4.28.185(1), and if doing so is consistent with due process. Our long-arm statute is designed to be coextensive with federal due process. Failla v. FixtureOne Corp., 181 Wn.2d 642, 650, 336 P.3d 1112 (2014), cert. denied, 135 S. Ct. 1904 (2015).

A state court's assertion of jurisdiction is subject to review for compatibility with the Fourteenth Amendment's Due Process Clause because it exposes defendants to that state's coercive power. Goodyear Dunlop Tires Operations, S.A. v. Brown, ___ U.S. ___, 131 S. Ct. 2846, 2850, 180 L. Ed. 2d 796 (2011). The maintenance of the suit will not offend traditional notions of fair play and substantial justice so long as the defendant has "certain minimum contacts" with the forum that is asserting jurisdiction. Int'l Shoe Co. v. State of Wash., 326 U.S.

310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945). As a general rule, the sovereign's exercise of power requires some act by which the defendant "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253, 78 S. Ct. 1228, 2 L. Ed. 2d 1283 (1958). This principle "gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980); accord Burger King Corp. v. Rudzewicz, 471 U.S. 462, 471-72, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985).

A three prong test is used to determine whether the federal due process clause is satisfied. Specific jurisdiction comports with federal due process so long as (1) purposeful "minimum contacts" exist between the defendant and the forum state; (2) the plaintiff's injuries arise out of or relate to those minimum contacts; and (3) the exercise of jurisdiction will be reasonable, that is, it will be consistent with notions of fair play and substantial justice. AU Optronics, 180 Wn. App. at 914. If a plaintiff satisfies the first two prongs, the burden shifts to the defendant to set forth a compelling case that the exercise of jurisdiction would not be reasonable. AU Optronics, 180 Wn. App. at 914-15.

At issue in the present case is the first prong, that is, whether Special "purposefully established" minimum contacts with Washington. Burger King, 471 U.S. at 474. Defendants may not be haled into Washington solely as the result

of contacts that are random, fortuitous, or attenuated. Burger King, 471 U.S. at 475. Noll must show either that Special's activities constituted purposeful availment of Washington's laws or purposeful direction toward Washington. AU Optronics, 180 Wn. App. at 915.

Noll relies on the stream-of-commerce doctrine to prove purposeful availment. "The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." World-Wide Volkswagen Corp., 444 U.S. at 297-98. Cases utilizing the stream-of-commerce doctrine as the basis for long-arm jurisdiction are numerous. The limits of the doctrine were recently explored by the United States Supreme Court in J. McIntyre, 131 S. Ct. 2780.

In that case, a British manufacturer—J. McIntyre—wanted to develop a market for its metal shearing machines in the United States. It sent representatives to attend trade shows in a number of American cities, though not in New Jersey. And it contracted with an American distributor who sold a single machine to a company in New Jersey. That machine allegedly malfunctioned and injured the plaintiff who brought a product liability suit in a New Jersey court. The New Jersey Supreme Court held that the single sale in New Jersey was a sufficient contact to satisfy the test for due process. J. McIntyre "knew or reasonably should have known that by placing a product in the stream of commerce through a distribution scheme that targeted a fifty-state market the

product might be purchased by a New Jersey consumer." Nicastro v. McIntyre Mach. Am., Ltd., 201 N.J. 48, 987 A.2d 575, 577 (2010), reversed, J. McIntyre, 131 S. Ct. 2780.

Six justices of the United States Supreme Court agreed to reverse the decision of the New Jersey Supreme Court, but they were not united in their reasoning. All six agreed that the New Jersey court had erroneously rested jurisdiction upon a single sale of a defective product in the forum State. The four-justice plurality—Justice Kennedy writing for himself, Chief Justice Roberts, and Justices Scalia and Thomas—was particularly concerned that the New Jersey court was erasing the constraints of political boundaries. The plurality opinion reminds courts that jurisdiction is rooted in "the central concept of sovereign authority." J. McIntyre, 131 S. Ct. at 2788 (plurality opinion). It is "inconsistent with the premises of lawful judicial power" to exercise personal jurisdiction over a nonresident "based on general notions of fairness and foreseeability." J. McIntyre, 131 S. Ct. at 2789 (plurality opinion). The plurality would have permitted the exercise of jurisdiction to be based on transmission of goods "only where the defendant can be said to have targeted the forum." J. McIntyre, 131 S. Ct. at 2788-89 (plurality opinion).

According to the plurality, the question is whether a defendant has followed a course of conduct "directed at" the society or economy existing within the jurisdiction of a given sovereign. J. McIntyre, 131 S. Ct. at 2789 (plurality opinion). The trial court here, relying on the plurality's statement of what is required in a stream-of-commerce case, concluded that Noll's complaint had to

8

be dismissed because there was no showing that Special directed its conduct at the society or economy of the State of Washington.

Justice Breyer authored a concurring opinion joined by Justice Alito. The concurring opinion is controlling because it resolved the issue on narrower grounds than the plurality's. AU Optronics, 180 Wn. App. at 919. The two concurring justices did not endorse the plurality's proposal for a strict rule requiring targeting of the forum. But neither were they willing to endorse New Jersey's view of the stream-of-commerce doctrine, as they concluded it would "abandon the heretofore accepted inquiry" into the relationship between the defendant and the forum. J. McIntyre, 131 S. Ct. at 2793 (Breyer, J., concurring in the judgment). According to the concurrence, the defendant's activities in J. McIntyre failed to establish personal jurisdiction under any articulation of the stream-of-commerce theory and thus the case could be resolved under the court's existing precedents, in particular World Wide Volkswagen Corp., 444 U.S. at 297-98. J. McIntyre, 131 S. Ct. at 2792 (Breyer, J., concurring in the judgment); State v. LG Elecs., Inc., 185 Wn. App. 394, 417-19, 341 P.3d 346 (2015), petition for review granted, No. 91391-9 (Wash. June 3, 2015). The concurrence rejected the New Jersey court's approach as too "absolute." J. McIntyre, 131 S. Ct. at 2793 (Breyer, J. concurring in the judgment). "None of our precedents" finds that a single isolated sale of a product in a State reflects a relationship between the defendant and the forum sufficient to support jurisdiction over an out-of-state defendant, "even if that defendant places his goods in the stream of commerce, fully aware (and hoping) that such a sale will take place."

J. McIntyre, 131 S. Ct. at 2792 (Breyer, J., concurring in the judgment); AU Optronics, 180 Wn. App. at 918-19.

Justice Breyer discussed the three separate opinions of Justices O'Connor, Brennan, and Stevens analyzing the stream-of-commerce metaphor in Asahi Metal Industry Co. v. Superior Court, 480 U.S. 102, 107 S. Ct. 1026, 94 L. Ed. 2d 92 (1987).  Justice O'Connor's opinion, he noted, would require "'something more'" than simply placing a product into the stream of commerce, even if the defendant is aware that the stream may or will sweep the product into the forum State.  J. McIntyre, 131 S. Ct. at 2792 (Breyer, J., concurring in the judgment).  Justice Brennan's opinion would allow jurisdiction where a sale in a State is part of "'the regular and anticipated flow'" of commerce into the State but not where that sale is only an eddy, i.e., an isolated occurrence.  J. McIntyre, 131 S. Ct. at 2792 (Breyer, J., concurring in the judgment).  Justice Stevens' opinion indicated that "'the volume, the value, and the hazardous character'" of a good may affect the jurisdictional inquiry and it emphasized Asahi's "'regular course of dealing.'"  J. McIntyre, 131 S. Ct. at 2792 (Breyer, J., concurring in the judgment).  The isolated sale of a single metal shearing machine to one company in New Jersey did not satisfy the stream-of-commerce analysis articulated by any of these separate opinions in Asahi.  Where there is no regular flow or regular course of sales into the forum state, and no "'something more,' such as special state-related design, advertising, advice, marketing, or anything else," the stream-of-commerce doctrine does not support personal jurisdiction.  J. McIntyre, 131 S. Ct. at 2792 (Breyer, J., concurring in the judgment).

We have applied Justice Breyer's concurring opinion in two recent cases, AU Optronics and LG Elecs. In AU Optronics, the defendant was an out-of-state manufacturer of display panels. The display panels became components of appliances that were sold in Washington through a regular flow or regular course of sales. AU Optronics, 180 Wn. App. at 925. Considering the volume of sales of these finished products in Washington, we rejected the defendant's argument that there was an insufficient showing of purposefulness. AU Optronics, 180 Wn. App. at 925. In LG Elecs., we similarly permitted the exercise of personal jurisdiction based on a regular flow of sales into Washington. LG Elecs., 185 Wn. App. at 422-25. Purposeful availment will be found "if the incidence or volume of sales into a forum points to something systematic—as opposed to anomalous." LG Elecs., 185 Wn. App. at 419.

Here, too, we conclude a Washington court may assert specific personal jurisdiction over Special, a component supplier, under the stream-of-commerce doctrine. Special's product was a known hazardous material, one of the factors mentioned by Justice Stevens in Asahi as affecting the jurisdictional inquiry. Special's asbestos was supplied for use in making large quantities of pipe to be distributed through existing channels of interstate commerce, including channels regularly flowing into the State of Washington. It is the regular flow or course of sales that distinguishes the facts here from the facts of J. McIntyre. A plaintiff is not required to prove both a regular flow and "something more."

This result is consistent with the stream-of-commerce analysis articulated in World-Wide Volkswagen Corp., 444 U.S. at 286. There, the Court rejected a

11

plaintiff's attempt to have an Oklahoma court exercise personal jurisdiction over a New York seller based on "the fortuitous circumstance that a single Audi automobile, sold in New York to New York residents, happened to suffer an accident while passing through Oklahoma." World-Wide Volkswagen Corp., 444 U.S. at 295. On the other hand, if the sale of a defective product in the forum state arises from efforts to serve the market for that product in other states "directly or indirectly," the exercise of jurisdiction in the forum state may be consistent with the Due Process Clause.

> This is not to say, of course, that foreseeability is wholly irrelevant. But the foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State. Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there. . . .
> . . . Hence if the sale of a product of a manufacturer or distributor such as Audi or Volkswagen is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve, directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others. The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State. Cf. Gray v. American Radiator & Standard Sanitary Corp., 22 Ill. 2d 432, 176 N. E. 2d 761 (1961).

World-Wide Volkswagen Corp., 444 U.S. at 297-98 (some citations omitted).

Special claims that even when a steady current of sales carries a product such as asbestos-cement pipe into the forum state, personal jurisdiction over the asbestos supplier depends on the supplier's actual knowledge that the asbestos would ultimately arrive in the forum state as a component. Special knew that its

asbestos was being used to make pipe at CertainTeed's plant in Santa Clara, California. But the record does not prove Special had actual knowledge that CertainTeed distributed its pipe outside California. According to Special, its dealings with the Santa Clara plant are sufficient purposeful contacts to allow California to assert jurisdiction but not Washington. The regular flow of Special's asbestos into Washington does not by itself support the assertion of jurisdiction by Washington, Special argues, because it does not establish that Special had contacts with Washington that were purposeful in nature.

The governing precedents do not require a plaintiff to prove a component supplier's actual knowledge of the manufacturer's plans to ship the finished product into the forum state. AU Optronics, World-Wide Volkswagen Corp., and Justice Breyer's concurrence in J. McIntyre require objective facts evidencing a regular flow or regular course of sales by which the product enters the forum state. As in AU Optronics, Special had a "large volume of expected and actual sales." AU Optronics, 180 Wn. App. at 924. The volume of Special's shipments of asbestos to CertainTeed's Santa Clara manufacturing plant, coupled with the volume of finished pipe distributed into Washington by CertainTeed, signifies that Special purposefully availed itself of the protection of Washington law.

This reasoning is supported by Gray v. American Radiator, a leading case on the application of the stream-of-commerce doctrine to a nonresident supplier of components. Gray, 22 Ill. 2d at 442, cited with approval in World-Wide Volkswagen Corp., 444 U.S. at 298. In Gray, the nonresident defendant in an Illinois court was Titan, an Ohio manufacturer. Titan negligently manufactured

13

and marketed a defective valve. The valve was later incorporated into a water heater by a Pennsylvania company. The water heater was sold to an Illinois resident, who was injured in Illinois when the heater exploded. Titan, the Ohio manufacturer, had no other contacts with Illinois. Titan argued, as Special does here, that the mere occurrence of an injury caused by its product in Illinois was insufficient to support personal jurisdiction by the Illinois court. But Titan did not claim that the use of its product in Illinois was an isolated occurrence. The court recognized that "the relevant inquiry is whether defendant engaged in some act or conduct by which he may be said to have invoked the benefits and protections of the law of the forum." Gray, 22 Ill. 2d at 440. Based on the inference that there was substantial use in Illinois of hot water heaters incorporating Titan's valves, the court determined that Titan purposefully availed itself of the protection of Illinois law, directly or indirectly:

> While the record does not disclose the volume of Titan's business or the territory in which appliances incorporating its valves are marketed, it is a reasonable inference that its commercial transactions, like those of other manufacturers, result in substantial use and consumption in this State. To the extent that its business may be directly affected by transactions occurring here it enjoys benefits from the laws of this State, and it has undoubtedly benefited, to a degree, from the protection which our law has given to the marketing of hot water heaters containing its valves. Where the alleged liability arises, as in this case, from the manufacture of products presumably sold in contemplation of use here, it should not matter that the purchase was made from an independent middleman or that someone other than the defendant shipped the product into this State.
>
> With the increasing specialization of commercial activity and the growing interdependence of business enterprises it is seldom that a manufacturer deals directly with consumers in other States. The fact that the benefit he derives from its laws is an indirect one, however, does not make it any the less essential to the conduct of his business; and it is not unreasonable, where a cause of action

14

arises from alleged defects in his product, to say that the use of such products in the ordinary course of commerce is sufficient contact with this State to justify a requirement that he defend here.

Gray, 22 III. 2d at 442.

Special does not claim that the presence of its asbestos on the construction sites in Washington where Donald Noll cut pipe was an isolated event. Whether Special knew that CertainTeed's Santa Clara plant was shipping pipe into Washington is not dispositive. Special's contacts with Washington were systematic. They were not random, isolated, fortuitous, attenuated, or anomalous. Pipe containing Special's asbestos flowed into Washington in the regular stream of commerce, not in a mere eddy. Special benefited indirectly from the laws of Washington that protected the marketing, sale, and use of asbestos pipe in Washington during the years that Donald Noll was exposed to it. Having accepted that benefit, Special cannot claim that its relationship with Washington lacked purpose.

Reversed.

Becker, J.

WE CONCUR:

Leach, J.

Dwyer, J.

15