

FILE
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE  JUN 0 8 2017

_____
CHIEF JUSTICE

This opinion was filed for record

at 8:00 am on June 8, 2017

_____
SUSAN L. CARLSON
SUPREME COURT CLERK

## IN THE SUPREME COURT OF THE STATE OF WASHINGTON

DONALD NOLL and CANDANCE NOLL, husband and wife,

          Respondents,

v.

AMERICAN BILTRITE INC.; AMETEK INC.; BIRD INCORPORATED; BORGWARNER MORSE TEC INC., as successor-by-merger to BORG-WARNER CORPORATION; CBS CORPORATION, a Delaware corporation f/k/a VIACOM INC., successor-by-merger to CBS CORPORATION, a Pennsylvania corporation f/k/a WESTINGHOUSE ELECTRIC CORPORATION; CERTAIN-TEED CORPORATION; CONWED CORPORATION; DOMCO PRODUCTS TEXAS INC.; FORD MOTOR COMPANY; GENERAL ELECTRIC COMPANY; GEORGIA-PACIFIC LLC; HERCULES INCORPORATED; HONEYWELL INTERNATIONAL INC.; INDUSTRIAL HOLDINGS CORPORATION f/k/a THE CARBORUNDUM COMPANY; INGERSOLL-RAND COMPANY; J-M MANUFACTURING COMPANY INC.; KAISER GYPSUM COMPANY INC.; KELLY MOORE PAINT COMPANY INC.; SABERHAGEN HOLDINGS INC.; SIMPSON LUMBER COMPANY LLC; and SIMPSON TIMBER COMPANY,

          Defendants,

No. 91998-4

En Banc

Filed  JUN 0 8 2017

No. 91998-4

SPECIAL ELECTRIC COMPANY, INC.,    )
    )
            Petitioner.        )
_____)

MADSEN, J.—For a Washington court to exercise specific personal jurisdiction over a defendant, the plaintiff must allege that the defendant purposefully availed itself of the privilege of doing business in Washington, thus invoking the benefits and protections of our laws. Without any such allegation, exercising jurisdiction would not comport with due process. In this case, Special Electric Company Inc. asks us to reverse the Court of Appeals because that court found Washington could exercise specific personal jurisdiction over Special Electric under a stream of commerce theory without any allegation that Special Electric purposefully availed itself of Washington's laws. Because the parties and trial court did not have the benefit of our recent decision in *State v. LG Electronics, Inc.*, 186 Wn.2d 169, 375 P.3d 1035 (2016), *cert. denied*, 137 S. Ct. 648 (2017), or the recently disclosed evidence of Special Electric's unrelated contacts in Washington, we remand this case to the trial court. We accepted review in this case, however, because we disagree with the Court of Appeals' application of *LG Electronics*, and this case offers an opportunity for us to give guidance to the lower courts on what a plaintiff must allege for specific personal jurisdiction. Based on the allegations currently before us, we agree that Donald Noll did not allege sufficient facts for Washington to exercise specific personal jurisdiction over Special Electric. Therefore, the trial court properly dismissed the case without prejudice. We do not, however, intend to preclude

2

the trial court from making its own finding of jurisdiction on remand depending on the allegations that the plaintiff then raises.

FACTS

Noll[1] sued a number of manufacturers, sellers, and suppliers of asbestos and asbestos-containing products, including Special Electric. Noll alleged that he developed malignant mesothelioma[2] from exposure to asbestos when he worked construction in Washington between 1977 and 1979 cutting asbestos-cement pipes. Those asbestos-cement pipes were manufactured by Certain-Teed Corporation, and Certain-Teed received most of its asbestos from Special Electric. Special Electric moved to dismiss on the basis that the trial court lacked specific personal jurisdiction over it because its contacts were limited to the California-based corporation, Certain-Teed, and did not extend to Washington.

Special Electric was incorporated in Wisconsin by Richard Wareham in 1957 and operated as a business that sold and distributed electrical insulation products. Wareham operated multiple companies with the "Special" moniker, including: Special Electric, Special Materials, and Special Asbestos. Special Electric is the named defendant in this suit. Special Electric is a corporation that exists only to hold insurance policies providing coverage for asbestos related injuries and to handle claims filed by those injured because of asbestos exposure from asbestos that the various Special companies sold. *See*

*Melendrez v. Superior Court*, 215 Cal. App. 4th 1343, 156 Cal. Rptr. 3d 335 (2013)

---

[1] After Donald Noll passed away in September 2013, his wife, Candance Noll, took over the case as the personal representative of his estate. This opinion refers to Donald Noll and the estate as "Noll" for simplicity.

[2] Malignant mesothelioma is a cancer of the lining around the lungs.

3

(outlining the recent history and status of Special Electric and related Special companies). Special's[3] principal place of business was Milwaukee, Wisconsin, and it had offices in eight states but none in Washington.

Between 1975 and 1981, Special supplied crocidolite asbestos to Certain-Teed for use in asbestos-cement pipe. Special had a five-year requirements contract with Certain-Teed's plant in Santa Clara, California, beginning in 1978. Certain-Teed manufactured and distributed asbestos-cement pipes on a national scale, and it specifically sold its product in Washington. Special also supplied Certain-Teed's Santa Clara plant with chrysotile asbestos during the late 1970s and early 1980s. Certain-Teed sales records show that it delivered asbestos-cement pipes to Washington from its Santa Clara plant. Between 1977 and 1979, Certain-Teed made at least 31 shipments of asbestos-cement pipes to Washington, totaling 55,000 linear feet.

Noll worked in Port Orchard, Washington, for a construction company between 1977 and 1979. In a deposition taken before his death, Noll testified that he was exposed to asbestos dust when cutting asbestos-cement pipe—both when he cut pipe and when other workers cut pipe around him. Certain-Teed had manufactured the pipe. Noll developed malignant pleural mesothelioma and died in 2013.

In the complaint, Noll alleged that "Defendants and/or their predecessors-in-interest are corporations who, at all times relevant herein, manufactured, sold or distributed asbestos-containing products or products that were used in conjunction with

---

[3] For purposes of the motion to dismiss based on lack of specific personal jurisdiction, Special Electric assumed arguendo that it is responsible for the actions of Special Materials and Special Asbestos. For simplicity, this opinion refers to all the Special companies as "Special" as the parties and courts below have done.

asbestos." Clerk's Papers at 2. Further, Noll alleged that he "was exposed to asbestos and asbestos-containing products which had been mined, manufactured, produced, and/or placed into the stream of commerce by the defendants and/or was exposed to asbestos through the use of products manufactured by defendants. As a direct and proximate result of this exposure, plaintiff Donald Noll developed mesothelioma." *Id.* For jurisdiction, Noll alleged, "This Court has jurisdiction over this cause pursuant to RCW 4.12.025 because, at all times relevant herein, defendants transacted business and/or may be served with process in [King] County, Washington." *Id.*

Special moved to dismiss for lack of specific personal jurisdiction. Special argued that Noll had alleged no facts in support of its conclusory statement that the defendants transacted business in Washington. And, Special argued, no such facts exist. According to Special, the following facts demonstrate that it does not have sufficient contact with Washington to support jurisdiction: it has never been licensed to do business in Washington; none of its officers, directors, or employees reside or are domiciled in Washington; it never had offices in Washington; it has no bank accounts or property in Washington; it does not pay taxes in Washington; and it has no agents in Washington. In response, Noll argued the facts detailed above: Special provided Certain-Teed with large quantities of asbestos, Certain-Teed used that asbestos to manufacture asbestos-cement pipes, Certain-Teed sold those pipes in Washington, and those pipes exposed Noll to asbestos.

The superior court granted Special's motion to dismiss for lack of specific personal jurisdiction. The court considered Special's motion to dismiss and

5

accompanying declaration, Noll's brief in opposition, and Special's reply. Noll moved for reconsideration and submitted evidence to support that motion. The trial court granted that motion in part. After considering the additional evidence that Noll provided,[4] the court upheld its dismissal for lack of specific personal jurisdiction but changed the order so that the case was dismissed *without* prejudice, as required by Washington law. *See State v. Nw. Magnesite Co.*, 28 Wn.2d 1, 42, 182 P.2d 643 (1947) (dismissals based on lack of personal jurisdiction are *without* prejudice because the court has no power to pass upon the merits of the case).

Division One of the Court of Appeals reversed and found that Noll had alleged sufficient facts for the trial court to exercise specific personal jurisdiction over Special. *Noll v. Am. Biltrite, Inc.*, 188 Wn. App. 572, 355 P.3d 279 (2015). According to the Court of Appeals, the record shows that Special supplied approximately 95 percent of the asbestos that Certain-Teed used to manufacturer asbestos-cement pipe at its Santa Clara, California, plant. *Id.* at 577. By supplying that asbestos to Certain-Teed, "Special regularly supplied raw asbestos for the manufacture of pipe that moved into Washington through established channels of sale." *Id.* at 578. The Court of Appeals acknowledged that Justice Breyer's concurring opinion in *J. McIntyre Machinery Ltd. v. Nicastro*, 564 U.S. 873, 131 S. Ct. 2780, 180 L. Ed. 2d 765 (2011) (plurality opinion), is the controlling opinion. *Noll*, 188 Wn. App. at 581. It then concluded that a Washington court could

---

[4] The additional evidence contained documents showing how extensive the relationship between Special and Certain-Teed was. It also showed that all of the asbestos-cement pipe that Certain-Teed manufactured included crocidolite asbestos, and that Special provided 95 percent of Certain-Teed's crocidolite asbestos. The trial court found that this additional evidence did not change its analysis.

assert specific personal jurisdiction over Special under a stream of commerce theory because the product was a known hazardous material, one of the factors mentioned by Justice Stevens in *Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102, 107 S. Ct. 1026, 94 L. Ed. 2d 92 (1987), and the asbestos was supplied for use in making large quantities of pipe distributed through existing channels of interstate commerce. *Noll*, 188 Wn. App. at 583. According to the Court of Appeals, the regular flow or course of sales distinguished this case from *J. McIntyre* because a "plaintiff is not required to prove both a regular flow *and* 'something more.'" *Id.* Although the Court of Appeals acknowledged that the record did not show that Special had knowledge that Certain-Teed distributed its pipe outside of California, "[t]he volume of Special's shipments of asbestos to Certain-Teed's Santa Clara manufacturing plant, coupled with the volume of finished pipe distributed into Washington by Certain-Teed, signifies that Special purposefully availed itself of the protection of Washington law." *Id.* at 585.

Special petitioned this court for review. We originally stayed the petition pending our decision in *LG Electronics*, 186 Wn.2d 169. When that decision became final, we granted Special's petition. The Washington Defense Trial Lawyers Association (WDTL), which had written in support of granting review, moved to submit an amicus curiae brief, which was granted.

After the parties submitted supplemental briefing in this court, Special moved to clarify the record. In its clarification, Special provided evidence that Special Materials and Special Asbestos had contracts with two Washington companies during the relevant period. The evidence appears to show shipment receipts for at least hundreds of tons of

asbestos from Special Asbestos and Special Materials to Auburn, Washington, and Seattle, Washington, from 1976 to 1980. These Washington companies are not parties to this suit and seem to be unrelated to Noll's exposure and injuries. Because these contacts are not transactionally related to Noll's claim, they are not relevant for specific personal jurisdiction, which is the only basis of jurisdiction the parties have argued thus far.[5]

## ANALYSIS

Where the underlying facts are not in dispute, this court reviews de novo a trial court's decision to dismiss for lack of personal jurisdiction. *FutureSelect Portfolio Mgmt., Inc. v. Tremont Grp. Holdings, Inc.*, 180 Wn.2d 954, 963, 331 P.3d 29 (2014); *Precision Lab. Plastics Inc. v. Micro Test, Inc.*, 96 Wn. App. 721, 725, 981 P.2d 454 (1999). We accept the allegations of the complaint as true, and the plaintiff must provide evidence sufficient to make a prima facie showing that jurisdiction is proper. *Precision*, 96 Wn. App. at 725.

"The Due Process Clause of the Fourteenth Amendment sets the outer boundaries of a state tribunal's authority to proceed against a defendant." *Goodyear Dunlop Tire Operations, SA v. Brown*, 564 U.S. 915, 923, 131 S. Ct. 2846, 180 L. Ed. 2d 796 (2011); U.S. CONST. amend. XIV. Under Washington's long arm jurisdiction statute, RCW 4.28.185, personal jurisdiction exists in Washington over nonresident defendants and foreign corporations as long as it complies with federal due process. *Shute v. Carnival Cruise Lines*, 113 Wn.2d 763, 766-67, 783 P.2d 78 (1989) (quoting *Deutsch v. W. Coast*

---

[5] For general personal jurisdiction, we analyze all of the defendant's contacts with the forum state. But for specific personal jurisdiction, we look to only those contacts related to the claim at issue. *See Goodyear Dunlop Tire Operations, SA v. Brown*, 564 U.S. 915, 919-24, 131 S. Ct. 2846, 180 L. Ed. 2d 796 (2011).

*Mach. Co.*, 80 Wn.2d 707, 711, 497 P.2d 1311, *cert. denied*, 409 U.S. 1009 (1972). Due process requires three elements be met for a court to extend personal jurisdiction: "(1) that purposeful 'minimum contacts' exist between the defendant and the forum state; (2) that the plaintiff's injuries 'arise out of or relate to' those minimum contacts; and (3) that the exercise of jurisdiction be reasonable, that is, that jurisdiction be consistent with notions of 'fair play and substantial justice.'" *Grange Ins. Ass'n v. State*, 110 Wn.2d 752, 758, 757 P.2d 933 (1988) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-78, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985)). The central concern of the federal inquiry is the relationship between the defendant, the forum, and the litigation. *See J. McIntyre*, 564 U.S. at 881; *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319, 66 S. Ct. 154, 90 L. Ed. 95 (1945).

There are two approaches to personal jurisdiction: specific and general. *See Daimler AG v. Bauman*, __ U.S. __, 134 S. Ct. 746, 754-55, 187 L. Ed. 2d 624 (2014). Specific personal jurisdiction analyzes the defendant's contacts with the forum state that are related to the plaintiff's claims and arose or existed at the time that the relevant event occurred. *Goodyear*, 564 U.S. at 923-24. General jurisdiction analyzes all of the defendant's contacts with the forum state, regardless of their relationship to the claims at issue. *Id.* at 924. General jurisdiction requires extensive and systematic contacts with the forum state. *Id.* at 919. Specific jurisdiction requires only minimum contacts. *Int'l Shoe*, 326 U.S. at 316. In the present case, Noll has alleged only specific personal jurisdiction. Therefore, we address only specific jurisdiction. We note, however, that the recently disclosed evidence of Special's substantial business connections to Washington unrelated

to Noll's claim may be relevant to a claim of general jurisdiction. But the parties have made no argument—either in this court or the courts below—based on general jurisdiction. Thus, we will not comment on whether Washington courts may exercise jurisdiction under a general jurisdiction theory.

> Noll did not allege sufficient facts for Washington courts to exercise specific personal jurisdiction over Special under the stream of commerce doctrine

This court recently decided *LG Electronics*, a case also involving specific personal jurisdiction for a stream of commerce case. There, we found the trial court could exercise specific personal jurisdiction over the defendants because the State had alleged that the defendants dominated the global market for their products,[6] sold the products into international streams of commerce with the intent that the product would come into Washington, and intended their price-fixing activity to elevate prices in Washington. *See* 186 Wn.2d at 182. This case does not require us to reconsider the legal principles we recently set forth in *LG Electronics*. Because Noll failed to allege *any* action by Special to purposefully avail itself of Washington's laws, the trial court properly dismissed the case for lack of specific personal jurisdiction.

To establish purposeful minimum contacts, the defendant must do some act that "'purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Burger King*, 471 U.S. at

---

[6] The product at issue in *LG Electronics* was cathode ray tubes (CRT), a display technology that was used in televisions and computer monitors. According to the State's complaint, North America was the largest market for CRT; in 1995 alone, 28 million CRT monitors were purchased in North America; over 90 percent of the retail market for monitors were CRT; 73 percent of televisions were CRT; and four of the defendants held a collective 78 percent share of the global CRT market. 186 Wn.2d at 173-74.

475 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S. Ct. 1228, 2 L. Ed. 2d 1283 (1958)). A foreign distributor does not purposefully avail itself when a sale in the forum state is an isolated occurrence or when the unilateral act of a third party brings the product into the forum state. *LG Elecs.*, 186 Wn.2d at 177 (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980)). The stream of commerce theory also does not allow jurisdiction based on the mere foreseeability that a product may end up in the forum state. *Id.* "Instead, the defendant's conduct and connection with the state must be such that it should reasonably anticipate being haled into court there." *Id.* at 178.

The stream of commerce cases from the United States Supreme Court in recent years have been deeply fragmented and have produced no clear majorities. *See, e.g., J. McIntyre*, 564 U.S. 873; *Asahi*, 480 U.S. 102. But, as we recognized in *LG Electronics*, when a Supreme Court case is fragmented, the holding of the Court is the position that is taken by the concurring opinion decided on the narrowest grounds. 186 Wn.2d at 180-81 (quoting *Marks v. United States*, 430 U.S. 188, 193, 97 S. Ct. 990, 51 L. Ed. 2d 260 (1977)). Thus, we concluded that Justice Breyer's concurring opinion in *J. McIntyre* represents the Supreme Court's most recent holding. *Id.* at 181.

In *J. McIntyre*, Justice Breyer held that a foreign manufacturer's sale of products through an independent, nationwide distribution system is not sufficient, without something more, for a state to assert personal jurisdiction over the manufacturer when only one product enters the forum state and causes injury. *Id.* (citing *J. McIntyre*, 564 U.S. at 888-89 (Breyer, J., concurring)). Our court found that *J. McIntyre* thus "did not

11

foreclose an exercise of personal jurisdiction over a foreign defendant where a substantial volume of sales took place in a state as part of the regular flow of commerce." *Id.* at 181. And the allegations in *LG Electronics*—that the defendants dominated the global market for their product, sold their product into international streams of commerce with the intent that the product would come into Washington, and intended their price fixing to elevate prices in Washington—were sufficient to survive the motion to dismiss. *Id.* at 182.

As stated above, this case does not require us to delve any deeper into the stream of commerce doctrine than we did in *LG Electronics* because Noll did not allege *any* acts by Special to purposefully avail itself of the privilege of doing business in Washington. The Supreme Court recently reaffirmed that the relevant relationship must arise out of the contacts that the *defendant itself* creates with the forum state. *Walden v. Fiore*, __ U.S. __, 134 S. Ct. 1115, 1122, 188 L. Ed. 2d 12 (2014) (citing *Burger King*, 471 U.S. at 475).[7] The Court has consistently rejected attempts to satisfy the "defendant-focused 'minimum contacts' inquiry" by demonstrating contacts between a third party and the forum state. *Id.* (citing *Helicopteros Nacionales de Colombia, SA v. Hall*, 466 U.S. 408, 417, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984) ("[The] unilateral activity of another party

---

[7] *Walden* is an intentional tort case. Thus, the Court ultimately applied the *Calder* effects test for jurisdiction. *See Calder v. Jones*, 465 U.S. 783, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984); *see also LG Elecs.*, 186 Wn.2d at 194-95 (Gordon McCloud, J., concurring/dissenting). But as the Court in *Walden* explained, the same general principles apply to both minimum contacts inquiries. *Walden*, 134 S. Ct. at 1122-23 (outlining minimum contacts tests from stream of commerce cases, then stating, "These same principles apply when intentional torts are involved"). Noll argues that amicus WDTL "exaggerates the import of *Walden*" because *Walden* is meant to apply only to intentional tort cases, not stream of commerce cases. But this argument, as explained above, loses sight of the core teaching.

or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction.")). "Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." *Id.* at 1123 (quoting *Burger King*, 471 U.S. at 475). In this case, amicus WDTL argues that the Court of Appeals' decision erred under *Walden* because it failed to limit its focus to Special's suit-related conduct. Amicus WDTL's argument is persuasive on this point. The Court of Appeals focused on Special delivering asbestos to Certain-Teed's plant in California and Certain-Teed then purposefully availing itself of Washington's laws by selling large quantities of asbestos-cement pipes to Washington companies. But the Court of Appeals acknowledged that Special may not have been aware that Certain-Teed was supplying the asbestos-cement pipes to companies in Washington, and it did not require any other evidence that Special purposefully availed itself of Washington's laws.

The only connection to Washington that Noll alleged was the unilateral act of an out-of-state third party, Certain-Teed. Noll did not allege that Special was aware of Certain-Teed's connection to Washington. Noll did not allege that Special was aware that Certain-Teed delivered any of its pipes outside of California. That Special delivered large quantities of asbestos into California is not sufficient to say it purposefully availed itself of the privilege of doing business in Washington, thus invoking the protection of our laws.

13

Noll argues that Special is reading an "actual knowledge" requirement into specific personal jurisdiction. Special and amicus WDTL both argue that there is, at least, an awareness requirement throughout personal jurisdiction cases. But this court need not decide if showing actual knowledge or awareness is necessary, or sufficient, to finding specific personal jurisdiction in stream of commerce cases. The relevant question is whether the plaintiff has alleged something to show that the defendant purposefully availed itself of the privilege of doing business in the forum state. Here, Noll failed to allege *any* action taken by Special to purposefully avail itself of the benefits and protections of the Washington market. Showing only that an out-of-state manufacturer sold a component part to another out-of-state manufacturer who then sold the finished product into Washington is not enough to confer specific personal jurisdiction in Washington.

## CONCLUSION

We remand this case to the trial court because the parties and trial court did not have the benefit of *LG Electronics* or the recently disclosed evidence of Special's other contacts in Washington. To help guide the lower courts of our state, however, we reject the Court of Appeals' application of *LG Electronics* and hold that, based on the record before us, the trial court properly dismissed this case for lack of specific personal jurisdiction over Special because Noll did not allege sufficient facts to show Special purposefully availed itself of the privilege of doing business in Washington.

No. 91998-4

_Madsen, J._

WE CONCUR:

No. 91998-4

GONZÁLEZ, J. (concurring)—The only issue presented in this toxic tort case is whether Washington has specific personal jurisdiction over defendant Special Electric Company Inc., a Wisconsin corporation. Plaintiff Donald Noll died of malignant mesothelioma following exposure to asbestos when he worked in construction cutting asbestos-cement pipes. Noll alleges that Special Electric was one supplier of that asbestos. He alleges that Special Electric sold asbestos to Certain-Teed Corporation in California, and that Certain-Teed used the raw asbestos product to manufacture asbestos-cement pipes that were later sold in Washington. Personal jurisdiction therefore hinges on whether Special Electric's activities in the stream of commerce are sufficient to support jurisdiction in Washington. We recently recognized the confusion surrounding the stream of commerce test caused by the various plurality decisions from the Supreme Court and sought to provide clarity regarding the scope of that test in *State v. LG Electronics, Inc.*, 186 Wn.2d 169, 176-83, 375 P.3d 1035 (2016), *cert. denied*, 137 S. Ct. 648 (2017). Our

*Noll v. Am. Biltrite, Inc.*, No. 91998-4 (González, J., concurring)

decision in *LG Electronics* was issued after the trial court had dismissed Special Electric as a party from this case for lack of personal jurisdiction.

The majority recognizes that the parties and the trial court should have had the benefit of our recent *LG Electronics* decision but then holds such guidance would not have mattered because "the trial court properly dismissed the case without prejudice." Majority at 2. Curiously, the majority would allow Noll to reargue the jurisdictional issue with new facts on remand even though his case against Special Electric would no longer exist under the majority's holding. *Id.* Because I would reverse and remand this case to the trial court to consider the application of *LG Electronics* to the facts as alleged, I respectfully concur in result only.

Moreover, I view the majority's analysis as a marked departure from *LG Electronics* that seeks to redefine and restrict the boundaries of personal jurisdiction. In *LG Electronics*, this court accepted the test articulated by Justice Breyer in *J. McIntyre* as the Supreme Court's most recent articulation of the stream of commerce test. 186 Wn.2d at 181 (citing *J. McIntyre Machinery Ltd. v. Nicastro*, 564 U.S. 873, 887-93, 131 S. Ct. 2780, 180 L. Ed. 2d 765 (2011) (Breyer, J., concurring) (plurality opinion)). Under that test, "a foreign manufacturer's sale of products through an independent nationwide distribution system is not sufficient, absent

2

*Noll v. Am. Biltrite, Inc.*, No. 91998-4 (González, J., concurring)

something more, for a State to assert personal jurisdiction over a manufacturer when only one product enters a state and causes injury." *Id.*[1]

We applied this test in *LG Electronics* and determined that global market domination tied with an intent to fix domestic prices, including prices in Washington, was enough to satisfy that "something more." *Id.* at 182. We never said specific forum targeting or awareness that one's products were entering that forum state was required to satisfy that "something more." Indeed, we specifically recognized that "*J. McIntyre* did not foreclose an exercise of personal jurisdiction over a foreign defendant where a substantial volume of sales took place in a state as part of the regular flow of commerce." *Id.* at 181. Yet, the majority requires more. Majority at 13.

While the majority purports to adhere to *LG Electronics* and even disclaims that it is adopting an "actual knowledge" requirement, it concludes there is insufficient evidence to support specific personal jurisdiction in this case against Special Electric because "Noll did not allege that Special was

---

[1] Justice Breyer left what minimum activities qualify as "something more" undefined. We know he would require more than the placement of products into the stream of commerce with knowledge that one of those products might end up being sold in the forum state. *LG Elecs.*, 186 Wn.2d at 180 (quoting *J. McIntyre*, 564 U.S. at 887-93 (Breyer, J., concurring)). Conversely, we also know Justice Breyer would require less than intentional or purposeful targeting of the forum state's market. *Id.* at 179-80. According to Justice Breyer, the constitutional floor for "something more" lies somewhere in between those two rules.

3

*Noll v. Am. Biltrite, Inc.*, No. 91998-4 (González, J., concurring)

aware of Certain-Teed's connection to Washington" and because "Noll did not allege that Special was aware that Certain-Teed delivered any of its pipes outside of California." Majority at 13. Consistent with its implicit adoption of an awareness requirement, the majority criticizes the Court of Appeals for finding personal jurisdiction despite the court's "acknowledg[ment] that Special may not have been aware that Certain-Teed was supplying the asbestos-cement pipes to companies in Washington." *Id.* Because I do not interpret *LG Electronics* as adopting an awareness requirement, I disagree with the majority's assertion that "[w]e accepted review in this case . . . because we disagree with the Court of Appeals'[s] application of *LG Electronics* . . . ." Majority at 2.

By focusing on the absence of awareness, the majority circumvents any real analysis of whether Noll alleged "something more" sufficient to satisfy *J. McIntyre* and *LG Electronics*. Although Noll did not allege any market dominance or national price fixing scheme comparable to that alleged in *LG Electronics*, Noll did allege that Special Electric had a nationwide sales presence in the United States as the exclusive sales agent for two asbestos mining companies, "General Mining and Finance and [the] Calaveras Asbestos Company." Clerk's Papers at 103. Noll claims this nationwide agency relationship led to Special Electric's five-year contract

4

*Noll v. Am. Biltrite, Inc.*, No. 91998-4 (González, J., concurring)

with Certain-Teed, which resulted in the sale of approximately 4,000 metric tons of asbestos to Certain-Teed annually from 1977 through 1979 and the delivery of at least 31 shipments totaling 55,000 linear feet of asbestos-cement pipes into Washington. Clerk's Papers at 108, 328-30. And while the majority is correct that Noll did not allege that Special Electric specifically knew about those Washington shipments, he did allege that Special Electric supplied over 90 percent of Certain-Teed's asbestos needs in California and that asbestos-cement pipes were the only asbestos products made there. *Id.* at 263-64. Thus, while the majority might be correct that "[s]howing only that an out-of-state manufacturer sold *a component* part to another out-of-state manufacturer who then sold *the finished product* into Washington is not enough to confer specific personal jurisdiction in Washington," majority at 14 (emphasis added), the sale of approximately 4,000 metric tons of asbestos annually for three years is undisputedly more than the sale of a single component part, and the shipment of over 55,000 linear feet of asbestos-cement pipes into Washington is certainly more than a single finished product. The question is whether that is enough to support an exercise of personal jurisdiction in Washington.

Noll should be given an opportunity to argue before the trial court that the totality of the facts he alleged is sufficient to support personal

5

*Noll v. Am. Biltrite, Inc.*, No. 91998-4 (González, J., concurring)

jurisdiction in Washington over Special Electric under *LG Electronics*.

Because the trial court misunderstood *J. McIntyre* as requiring "some kind

of proactive targeting; something that requires an effort and an intent," Noll

had to limit his factual arguments to that misunderstanding. Verbatim

Report of Proceedings (May 10, 2013) at 31. I would remand to the trial

court to consider whether specific personal jurisdiction exists in light of *LG*

*Electronics*.

González, J.

_____

Jr., J

Fairhurst. CJ.

Wiggins J.